UNITED STATES of America,

v.

Richard GENIN, Defendant.

No. 08 Cr. 674(SCR).

United States District Court,
S.D. New York.

Jan. 26, 2009.

414

Sarah Rebecca Krissoff, U.S. Attorney's Office, White Plains, White Plains, NY, for United States of America.

Clinton Warren Calhoun, Briccetti, Calhoun and Lawrence, White Plains, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

STEPHEN C. ROBINSON, District Judge.

Richard Genin has been indicted with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Prior to the issuance of an indictment, agents with the Federal Bureau of Investigation ("FBI") executed a search warrant at Mr. Genin's apartment in New Rochelle, New York. Agents found one crate and numerous bags of videos allegedly depicting child pornography, paperwork and. receipts regarding the alleged purchase of child pornography, and a WebTV console [1] that Mr. Genin allegedly used to obtain child pornography. While the agents were searching the apartment, other law enforcement officers interviewed Mr. Genin. During the course of that interview, Mr. Genin stated that he had purchased child pornography from websites through a WebTV connection using the e-mail address hellmansmayo13@webtv.net; that he had used numerous websites to purchase child pornography, including one website in Texas, one website in Florida, and one website in Italy; that he had purchased about twelve DVDs from the Italian website; and that he had used money orders and wire transfers to purchase the child pornography that was then sent to him.

Mr. Genin has filed pre-trial motions seeking to suppress physical evidence and

---

1. WebTV is a service that allows users to access the internet through consoles connected to their television sets.

his voluntary statements; to require the Government to prepare a bill of particulars; to obtain pretrial disclosures, materials under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, and discovery under Rule 16 of the Federal Rules of Criminal Procedure.

For the reasons set forth in this opinion, the Court denies Mr. Genin's pretrial motions in their entirety.

# I

## BACKGROUND

The following facts were taken from an affidavit signed by Stephen Tortorella, an FBI Special Agent, and submitted in connection with the Government's application for a search warrant for Mr. Genin's apartment.

### A. The Origins of the Investigation

The investigation that led to Mr. Genin's arrest in this case began in late 2006, when Italian authorities arrested an individual (henceforth, the "YVM Operator") who operated the websites youngvideomodels.net and youngvideomodels.com (collectively, "YVM" or the "YVM websites"). The YVM websites were used for producing and selling videos containing child pornography. Following his arrest, the YVM Operator provided to Italian authorities e-mail addresses for those individuals who had purchased videos from YVM.

According to investigation reports prepared by Europol, the European Union's criminal investigation agency, and given to the FBI in connection with this investigation, visitors to the YVM websites could purchase videos one of two ways. If they chose to download the videos, then the YVM Operator would send them a website link and password and customers would use the password to access the website and download the digital videos. Alternatively, the customer could order DVDs directly from the YVM Operator and receive them through the mail. Customers paid for the videos by sending cash to the YVM Operator, by credit card, or using online payment systems.

A dossier prepared by Europol, as summarized by the FBI, reported that the individuals appearing in the videos that were available on the YVM websites "were all born in the years 1990 through 1998." Affirmation of Clinton W. Calhoun, III, ("Calhoun Affirm.") Exh. C at ¶ 9. The FBI summary of the Europol report also indicates that "in some of the videos, the minors are depicted engaging in sexual acts, such as actual or simulated masturbation, oral sex, or simulated vaginal sex with adults or each other." *Id.* It further states that in "many of the videos, the minors are dressed in 'string' lingerie or are completely nude, and are posed such that their genitals are the focus of the image. *Id.* The videos on the YVM websites were listed with letter and number combinations, indicating the first initial of the victim and the number of the movie.

On May 29, 2007, Europol agents provided the FBI with a hard drive containing copies of approximately 150 movies seized from the YVM Operator. (Special Agent Tortorella's affidavit does not state whether the videos seized from the YVM Operator also appeared on the YVM websites or whether the YVM Operator possessed any additional movies not turned over by Europol agents.) These movies were reviewed by an analyst from the FBI's Innocent Images Unit ("IIU"), but not by Special Agent Tortorella. The name of the analyst is not set forth in the affidavit; similarly, the affidavit does not set forth the analyst's qualifications or experience.

This IIU analyst concluded that all of the seized videos depicted females under

the age of 17 and some under the age of 10. Indeed, the title screen in the videos stated the age of the minor depicted. The analyst's conclusion was further supported by Europol's actual identification of these minors. At some point in these videos, "nearly all of the minors appear nude or partially nude." *Id.* ¶ 10. Furthermore, "in nearly all of the videos the minors are engaged in sexual acts, or are depicted with their legs spread, or the camera lens zoomed in close on their pubic region, thereby clearly exposing the minor's genitals." *Id.*

### B. Hellmansmayo13@webtv.net and Mr. Genin

Thereafter, Special Agent Tortorella reviewed a summary prepared by the FBI's IIU analyst of fifteen e-mails sent from hellmansmayo13@webtv.net to the YVM Operator, which were found by Europol on the YVM Operator's computer. The e-mails were exchanged between August 20, 2005, and August 3, 2006. The subscriber information associated with the e-mail address hellmansmayo13@webtv.net is Richard Genin, 1 Stonelea Place, New Rochelle, N.Y. 10801. Consolidated Edison also confirmed that the utilities provided to the foregoing address are registered in the name of Richard Genin.

The following statements appear amongst the fifteen e-mails sent between hellmansmayo13@webtv.net to the YVM Operator:

- On August 22, 2005, the sender wrote: "Tomorrow I will go to one of the many MoneyGram locations in my city to transfer $181.50 to you for the six videos"; and "DVDs in NTSC A3, A5, AJ, N3, N6, and N16." *Id.* ¶ 16.a.

- On April 8, 2006, the sender wrote: "I bought 6 dvds from you last year and I'd like to buy 6 more;" "the 6 dvds n ntsc I want are. D1 Daphne 1 D2

Daphne 2KR 1 Kristina KR2 Kristina 2LK 1 Larissa * Kristina 1 DI1 Daphne * Irina 1;" and "Price $192.00." *Id.* ¶ 16.b.

- On April 22, 2006, the sender wrote: "The two single girl videos each for Daphne and Kristina are fantastic! They are both gorgeous. I love their tiny outfits and the way they pose;" "My only minor disappointment was the two 2–girl videos. Irina blocked Daphne's body a lot, especially when applying lotion to that beautiful blonde's firm, athletic stomach. The Larisa and Kristina video had a different, 16 year old Kristina, not the 7 year old that I was expecting;" "I think Daphne and Kristina re [sic] both incredible, and Daphne is my absolute favorite. She is only of the most beautiful girls I have ever seen;" and "I would like my first custom DVD to be of Daphne." *Id.* ¶ 16.c.

- On May 5, 2006, the sender wrote: "First, I have 18 DVDs. My favorites, in order are Daphne(2), 7 y.o. Kristina(2), Anastasya(5), Anja(1) but outfit is not skimpy enough, Nadia(6), Daphne + Irina(1), and Larisa + 15 y.o. Kristina(1). I prefer younger girls and I like to see them move, not simply pose. My favorite DVD is Daphne # 2, and 7 y.o. Kristina's videos are a very close second." *Id.* ¶ 16.d.

- On May 21, 2006, the sender wrote: "Today, Sunday, May 21 at 1:10PM EDT, I sent $206.50 to [the YVM Operator] from a local Western Union office in my home city of New Rochelle" and "The Money Transfer Control Number is: 592–061–6148." *Id.* ¶ 16.e.

- On August 3, 2006, the sender wrote: "Okay, for now I will buy 7yo Kristina # 4 (KR4) for $35.50 by Western Un-

ion," and "Please keep me in mind for new videos. Remember I like younger models like 7yo Kristina, Daphne, and 9yo hidden model Angelina." *Id.* ¶ 16.f.

Of particular importance to this case, Special Agent Tortorella's affidavit states: "According to the summary [prepared by an IIU analyst], an IIU analyst from the FBI reviewed a number of the videos referenced in the e-mails from hellmansmayo 13@webtv.net to [YVM] O[perator]. The analyst confirmed that the videos contained *child pornography*." *Id.* ¶ 19 (emphasis added). The affidavit does not note which videos the IIU analyst reviewed or describe which category of child pornography these videos fell into. *See infra* p. 419–20.

The user of the e-mail account hellmansmayo13@webtv.net provided the following name and home address to the YVM websites: Richard Genin, 1 Stonelea Place, Apt. b–31, New Rochelle, New York 10801. A different shipping name and address was provided, however: Richard Genin, Richard's Generation, 2005 Palmer Avenue #131, Larchmont, New York 10538,

Subsequently, two undercover spam e-mail solicitations relating to child pornography were sent to hellmansmayo13@ webtv.net from a United States Postal Inspection Service ("USPIS"). The USPIS never received a response to these e-mail solicitations.

Special Agent Tortorella's affidavit, containing the foregoing information, was presented to a United States Magistrate Judge on March 31, 2008, who signed the warrant authorizing the search of Mr. Genin's apartment.

## C. The Search and Mr. Genin's Statements

On April 1, 2008, law enforcement authorities executed the search warrant.

Among other things, authorities recovered (1) receipts for Western Union money transfers to the YVM Operator; (2) a WebTV console; (3) paperwork regarding the purchase of various videos; (4) one crate and numerous bags of videos in VHS and DVD format.

While the authorities were searching Mr. Genin's apartment, other law enforcement officers interviewed Mr. Genin. During the course of that interview, Mr. Genin stated that he lived alone at 1 Stonelea Place, Unit B31, in New Rochelle, New York; that he had purchased child pornography from websites through a WebTV connection using the e-mail address hellmansmayo13@webtv.net; that he had used numerous websites to purchase child pornography, including one website in Texas, one website in Florida, and one website in Italy; that he had purchased about twelve DVDs from the Italian website; and that he had used money orders and wire transfers to purchase the child pornography that was then sent to him.

## II

## DISCUSSION

### A. Motion to Suppress

#### 1. Standard of Review

■ A magistrate's determination that probable cause exists to support the issuance of a search warrant, the Supreme Court of the United States has explained, "should be paid great deference by reviewing courts." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983) (explaining that a reviewing court "should start with the proposition that the magistrate's finding of

probable cause is entitled to substantial deference"); *United States v. Gotti,* 399 F.Supp.2d 214, 225 (S.D.N.Y.2005) (same). The role of the reviewing court therefore is circumscribed to ensuring that the issuing magistrate had a "substantial basis" for concluding that probable cause existed. *See Gates,* 462 U.S. at 236, 103 S.Ct. 2317; *Walczyk v. Rio,* 496 F.3d 139, 157 (2d Cir.2007). Given this deferential standard, the reviewing courts "resolve any doubt about the existence of probable cause in favor of upholding the warrant." *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir.1998) (citing *United States v. Jakobetz,* 955 F.2d 786, 803 (2d Cir.1992)); *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("The Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches." (internal quotation marks and citation omitted)).

■■■ Nevertheless, it is for the reviewing court to "decide whether the magistrate performed his neutral and detached function on the facts before him, and did not merely serve as a rubber stamp for conclusions drawn by the police." *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983). As the Supreme Court emphasized in Gates, a warrant affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause, and ... wholly conclusory statement[s] ... fail[] to meet this requirement." *Gates,* 462 U.S. at 239, 103 S.Ct. 2317. "In order to ensure that ... an abdication of the magistrate's duty does not occur," the Supreme Court has instructed, "courts must continue to consci-

entiously review the sufficiency of affidavits on which warrants are issued." *Id.*

With this standard of review in mind, the Court turns to Mr. Genin's arguments that probable cause did not support the magistrate's issuance of a search warrant in his case.

## 2. The Search Warrant Was Not Supported by Probable Cause

Mr. Genin contends that Special Agent Tortorella's affidavit was insufficient to establish probable cause to search his apartment. *First,* Mr. Genin submits that neither Special Agent Tortorella nor the issuing magistrate judge reviewed the allegedly proscribed materials that were recovered from the YVM Operator. Although the affidavit states that an FBI analyst from the IIU reviewed the videos referenced in the e-mails between hellmansmayo13@webtv.net and the YVM Operator and concluded that the videos constituted child pornography, the affidavit does not disclose the identity, credentials, qualifications, or expertise of the analyst. The affidavit, moreover, does not identify which of videos referenced in the e-mail correspondence this analyst allegedly reviewed or whether any of those videos actually was possessed by Mr. Genin. *Second,* Mr. Genin contends that the information in the affidavit was stale and thus was insufficient to establish probable cause. The last e-mail excerpted in the affidavit is dated August 3, 2006, while the search warrant was not issued until March 31, 2008, almost twenty months after the last e-mail.

After setting forth the legal principles governing the probable cause inquiry, the Court shall return to Mr. Genin's submissions.

### a.

■■■ The Fourth Amendment to the Constitution of the United States provides

that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Probable cause, the Supreme Court has observed, is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317 (explaining that probable cause does not require a "prima facie showing"). It exists if, "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317; *see also United States v. Falso,* 544 F.3d 110, 117 (2d Cir.2008). Thus, although "probable cause requires more than a 'mere suspicion,' of wrongdoing, its focus is on 'probabilities,' not 'hard certainties.'" *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir.2007) (quoting *Mallory v. United States,* 354 U.S. 449, 455, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) and *Gates,* 462 U.S. at 231, 103 S.Ct. 2317). Whether the probabilities amount to probable cause must be assessed in light of "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Gates,* 462 U.S. at 231, 103 S.Ct. 2317).

### b.

Mr. Genin's argument regarding the insufficiency of the affidavit can be unpacked into two separate, though perhaps related, contentions. One is that the determination whether a particular video constitutes child pornography must be made by the issuing magistrate based on more than the *ipse*

dixit of a law enforcement agent; the second is that the magistrate had no way of assessing the reliability of the IIU analyst who concluded that these videos depicted child pornography.

The Court begins by narrowing the issue that must be adjudicated. There is little doubt that the issuing magistrate had a substantial basis for concluding that there was probable cause to believe that all of the individuals appearing in the videos referenced in the e-mails between Mr. Genin and the YVM Operator were minors. The e-mails themselves discuss "models" exclusively under the age of sixteen and as young as seven. Furthermore, the Europol report summarized by the FBI concluded that all of the individuals depicted on the YVM websites were minors. Nevertheless, to issue the warrant allowing the authorities to search Mr. Genin's apartment for contraband related to violations of 18 U.S.C. § 2252 or 18 U.S.C. § 2252A, the magistrate judge had to make an additional finding. The magistrate judge had to conclude that there was probable cause that Mr. Genin had solicited or possessed videos depicting those minors engaged in either "sexually explicit activity," *see, e.g.,* 18 U.S.C. § 2252(a)(2)(A), or "child pornography," *id.* § 2252A(a)(2)(A) [2]; *United States v. Battershell,* 457 F.3d 1048, 1051 (9th Cir. 2006) ("To withstand review, we must determine that the warrant application made a sufficient showing that there was probable cause for the magistrate to believe that the pictures likely to be found on [the defendant's] computer depicted (1) sexually explicit conduct; and (2) a minor engaged in that conduct").

---

**2.** *See generally United States v. Williams,* —— U.S. ——, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (discussing the constitutionality of 18 U.S.C. § 2252A(a)(3)(B) after Congress's amendments following the Supreme Court's prior decision in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002)).

Federal law defines five categories of behavior that constitute sexually explicit conduct for purposes of child pornography. *See* 18 U.S.C. § 2256(8) (defining "child pornography" as "any visual depiction, including any ... video ... where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct"). Section 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated (i) sexual intercourse ...; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."

 As several courts have observed, the first four of these categories of sexually explicit conduct describe behavior that, in most circumstances, is "clearly defined and easily recognized;" *United States v. Jasorka,* 153 F.3d 58, 60 (2d Cir.1998) (describing the reasoning of the opinion issued by the District Court for the Eastern District of New York); *see also Battershell,* 457 F.3d at 1051 (observing that "[t]he first four categories, with the possible exception of the fourth category, ... involve easily identifiable nouns that are hot qualified by amorphous adjectives"). The last category, however—"lascivious exhibition of the genitals or pubic area," 18 U.S.C. § 2256(2)(A)(v)—is "far more sub-

jective and open to interpretation," due to the use of the term "lascivious."[3] *Battershell,* 457 F.3d at 1051; *United States v. Brunette,* 256 F.3d 14, 18 (1st Cir.2001) ("[T]he identification of images that are lascivious will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer." (internal quotation marks omitted)); *Jasorka,* 153 F.3d at 60 (describing the district court as holding that "the conduct in question, limited by the adjective 'lascivious,' calls into play imprecise value judgments raising issues comparable to those that arise when testing for obscenity....").

 The Second Circuit has explained that the "term 'lascivious' is not self defining," and thus "jurors (and judges) need neutral references and considerations to avoid decisions based on individual values or the revulsion potentially raised in a child pornography prosecution" based on lascivious depictions of minors. *United States v. Rivera,* 546 F.3d 245, 252 (2d Cir.2008). Indeed, even the factors frequently used to analyze lasciviousness— the Dost factors[4]—have "provoked misgivings." *Rivera,* 546 F.3d at 250–53 (outlining the criticism of, and declining to answer the question, whether the *Dost*

---

3. It is worth noting that the term "lascivious" is not unconstitutionally subjective—that is, vague or overbroad. *See United States v. X–Citement Video, Inc.,* 513 U.S. 64, 78–79, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

4. In determining lasciviousness, "the trier of fact should look to ... among any others that may be relevant in the particular case," the following factors:
1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
2) whether the setting of the visual depiction is sexually, suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or inappropriate attire, considering the age of the child;
4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity.
6) Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
*United States v. Dost,* 636 F.Supp. 828 (S.D.Cal.1986), *aff'd sub nom., United States v. Wiegand,* 812 F.2d 1239 (9th Cir.1987).

factors should control every child pornography case).

As a consequence of the interpretive ambiguity inherent in the term "lascivious," many courts have held that, in the probable cause context, a magistrate may not issue a search warrant based solely on a law enforcement officer's conclusion that the target of the warrant is in possession of "lascivious" photographs or videos. *See Battershell,* 457 F.3d at 1051–53; *United States v. Syphers,* 426 F.3d 461, 465–66 (1st Cir.2005); *Brunette,* 256 F.3d at 17–19; *Jasorka,* 153 F.3d at 59–60 (describing the district court's opinion but avoiding the issue). These courts therefore require the law enforcement officer either to append the allegedly lascivious material or—given the Supreme Court's decision in *New York v. P.J. Video,* 475 U.S. 868, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986)[5]—to provide a description that is sufficiently detailed for a magistrate to reach an independent legal conclusion that the material is indeed lascivious. *See Battershell,* 457 F.3d at 1051–53; *United States v. Syphers,* 426 F.3d 461, 465–66 (1st Cir.2005); *Brunette,* 256 F.3d at 17–19; *Jasorka,* 153 F.3d at 59–60 (describing the district court's opinion but avoiding the issue); *United States v. Christie,* 570 F.Supp.2d 657, 688–89 (D.N.J.2008).[6] These cases, in short, stand for the proposition that the probable cause

determination is a nondelegable judicial duty,

■■■ Although only recently applied in child pornography cases, this merely is a specific application of the oft-repeated principle that a magistrate's "action cannot be a mere ratification of the bare conclusion of others," *see Gates,* 462 U.S. at 239, 103 S.Ct. 2317, nor a proverbial "rubber stamp for conclusions drawn by the police," *Travisano,* 724 F.2d 341, 345–46 (2d Cir.1983). *See also, e.g., United States v. Wilhelm,* 80 F.3d 116, 119 (4th Cir.1996); *United States v. Smith,* 783 F.2d 648, 654 (6th Cir.1986). As Justice Jackson so eloquently explained:

> Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

*Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

**5.** In *P.J. Video,* the Supreme Court explained: "[W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. On the contrary, we think that *a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable* cause...." 475 U.S. at 874 n. 5, 106 S.Ct. 1610 (internal citation omitted) (emphasis supplied).

**6.** *But see United States v. Simpson,* 152 F.3d 1241, 1247 (10th Cir.1998) (holding that "such generalized descriptions as 'child pornography' " satisfied the probable cause stan-

dard in the context of the definition of child pornography under Oklahoma law); *United States v. Grant,* 434 F.Supp.2d 735, 746 (D.Neb.2006).

Two other cases—*United States v. Kimbrough,* 69 F.3d 723, 727 (5th Cir.1995) and *United States v. Koelling,* 992 F.2d 817, 821–22 (8th Cir.1993)—conclude that a generalized description is sufficient, but these cases do so within the context of whether the search warrants were sufficiently particularized with respect to the materials to be seized, rather than in the context of the probable cause determination.

At issue in *Brunette*, for example, was a search warrant affidavit submitted by a United States Customs agent with approximately eighteen months of experience investigating child pornography crimes. The agent's affidavit asserted that all of the thirty-three photographs that he viewed fell within the statutory definition of child pornography. *Brunette*, 256 F.3d at 15–16. The agent, however, "did not append any of the allegedly pornographic images to the warrant application. Nor did his affidavit contain a description of them; instead, he merely asserted that they met the statutory definition of child pornography." *Id.* at 16–17 (noting that the agent merely "parrot[ed] the statutory definition" of child pornography). The Court determined that probable cause had not been established.

A judge cannot ordinarily make this determination without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them. . . .

The district court excused the absence of descriptive evidence by relying on Agent Jereski's representation that the images were pornographic, finding that his training and experience qualified him to determine they met the statutory definition. But probable cause to issue a warrant must be assessed by a judicial officer, not an investigating agent. This judicial determination is particularly important in child pornography cases, where the existence of criminal conduct often depends solely on the nature of the pictures.

As the district court recognized, the identification of images that are lascivious will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer. That inherent subjectivity is precisely why the determination should be made by a judge, not an agent. The Fourth Amendment requires no less, Moreover, Jereski had less than two years' experience investigating child pornography crimes, and in that brief tenure he had testified only twice before in support of warrant applications, one of which included copies of the images at issue.

*Id.* at 18–19 (internal quotation marks and citations omitted).

*Battershell* is similarly instructive. At issue there were two photographs that allegedly had been in the possession of the defendant. Neither of these photographs were included in the search warrant application presented to the magistrate. The application noted that the two individuals who had alerted the police had described these photographs as depicting "kids having sex." *Battershell*, 457 F.3d at 1049. The application described the photographs as follows: One photograph was of "a young female (8–10 YOA) naked in a bathtub. The second picture showed another young female having sexual intercourse with an adult male." *Id.* The Ninth Circuit distinguished the two photographs. With respect to the first photograph, the Court held: "[The officer's] terse description, absent an accompanying photograph, is insufficient to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area because his conclusory statement is an inherently subjective analysis and it is unclear if the photograph exhibited the young female's genitals or pubic area." *Id.* at 1051. The court held that the officer's description of the second photograph was sufficient to establish probable cause, however, because the photograph "involves an image in one of the first four categories (*i.e.*, sexual intercourse)" of sexually explicit conduct. *Id.* at 1053.

The Court now turns to the application of the foregoing principles to the magis-

trate's determination of probable cause based on Special Agent Tortorella's affidavit.

### c.

 The affidavit presented to the issuing magistrate here suffers from me same problems described in the foregoing cases. The affidavit does not append, or provide *any* description of, the particular videos referenced in the e-mail correspondence between Mr. Genin and the YVM Operator. The affidavit merely states: "According to the summary [prepared by an unnamed IIU analyst], an IIU analyst from the FBI reviewed *a number of the videos* referenced in the e-mails from hellmansmayo13@webtv.net to [the YVM] O[perator]. The analyst confirmed that the videos contained *child pornography*." Calhoun Affirm. Exh. C ¶ 19 (emphasis added). Notably, the affidavit does not describe which particular videos the unnamed IIU analyst reviewed or identify which of the five categories of sexually explicit conduct these videos allegedly fell into. The unnamed analyst's conclusory description—"child pornography"—covers *both* the first four categories of sexually explicit conduct, which courts have held are "clearly defined and easily recognized," as well as the last category—lasciviousness—which "calls into play [the] imprecise value judgments" of the unnamed IIU analyst [7] who determined that the videos depicted *lascivious exhibition of the genitals or pubic area. See Jasorka,* 153 F.3d

at 60; *see also Battershell,* 457 F.3d at 1049–51; *Brunette,* 256 F.3d at 18–19.

The e-mails themselves do not resolve this ambiguity. Although the statements contained in the e-mails undoubtedly establish probable cause to believe that the videos depict minors, the e-mails themselves do not describe behavior that falls within the first four categories of sexually explicit conduct. *See* 18 U.S.C. §§ 2256(2)(A)(i)-(iv). Nor do the e-mails contain any descriptions of the videos from which a magistrate could independently conclude that they depicted lascivious exhibition of the genitals or pubic area. In one of the e-mails to the YVM Operator, for example, Mr. Genin states that one of the videos shows a minor "applying lotion to that beautiful blonde's firm, athletic stomach," and, while describing another video, he claims to "love their tiny outfits and the way they pose." Calhoun Affirm. Exh. C.¶ 16.c. Assuredly, such descriptions of minors are sordid. Standing alone, however, they do not create probable cause to believe that the videos depict "lascivious exhibition of the genitals or pubic area." *See* 18 U.S.C. § 2256(2)(A)(v); *see also Battershell,* 457 F.3d at 1051 ("[The officer's] terse description, absent an accompanying photograph, is insufficient to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area because his conclusory statement in an inherently subjective analysis and it is unclear if the photograph exhibited the young female's genitals or pubic area.");

---

7. This problem was compounded in this case because the FBI agent who signed the warrant affidavit was not the individual who reviewed the videos and came to the conclusion that they contained child pornography. To be sure, the Supreme Court in *United States v. Ventresca* held that "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." 380 U.S. 102, 111, 85 S.Ct. 741,

13 L.Ed.2d 684 (1965); *see also Velardi v. Walsh,* 40 F.3d 569, 574 (2d Cir.1994). Here, however, if the magistrate judge had wanted to question the Government as to the basis for its conclusion that the videos contained child pornography—one of the key legal determinations upon which the issuance of the warrant hinged—the affiant appearing before the magistrate would have been unable to offer any assistance.

*Brunette,* 256 F.3d at 18–19 ("[T]he identification of images that are lascivious will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer. That inherent subjectivity is precisely why the determination should be made by a judge, not an agent. The Fourth Amendment requires no less."). Consequently, neither the e-mail correspondence itself nor the unnamed FBI analyst's bare and overly broad conclusion that the videos referenced therein contain child pornography is sufficient to establish probable cause to believe that a search of Mr. Genin's apartment would uncover evidence of child pornography.[8]

The question, then, becomes whether the magistrate could have determined, based on the other videos discussed in the affidavit,[9] that the particular videos referenced in the e-mail correspondence between Mr. Genin and the YVM Operator fall within the lasciviousness category. Although this is a very close issue, the Court believes not. With respect to the videos peddled on the YVM websites, for example, the affidavit indicates that "some of the videos" contain behavior that falls within the first four categories of sexually explicit behavior, *i.e.,* sexual intercourse or acts. *Id.* ¶ 9. It also states that "many of the videos" depict minors "dressed in 'string' lingerie or . . . completely nude, and . . . pos[ing] such that their genitals are the focus of the image," *id.,* behavior that most likely falls within the lasciviousness category. The affidavit, however, does not delineate whether these two categories of videos overlap and, if so, to what degree.[10] That is, it is entirely possible that the YVM websites contained videos that fall outside the applicable definitions of child pornography. *See Battershell,* 457 F.3d at 1051 ("To withstand review, we must determine that the warrant application made a sufficient showing that there was probable cause for the magistrate to believe that the pictures likely to be found on [the defendant's] computer depicted (1) sexually explicit conduct; and (2) a minor engaged in that conduct."). Similarly problematic is the absence of information linking the particular videos referenced in the e-mail correspondence to the videos that the affidavit describes as depicting sexually explicit conduct and as appearing on the YVM websites.

As a result of the foregoing deficiencies, the affidavit only shows that Mr. Genin

---

**8.** This case, thus, is distinguishable from *United States v. Bonczek,* No. 08 Cr. 361, 2008 WL 4615853, at *11 (S.D.N.Y. Oct. 16, 2008). In *Bonczek,* the "affidavit did more than simply state that [the officer] observed 'lewd images' of children—it also stated that the children appeared to be between 2 and 7 years old, 'with genitalia exposed,' and 'posed in a sexually explicit manner.'" *Id.* In this case, the affidavit does not contain any such description of the videos referenced in the e-mail correspondence between Mr. Genin and the YVM Operator. Although the affidavit contains language similar to that used in *Bonczek,* as discussed in the text, it does so in connection with videos that bear little relevant relation to Mr. Genin.

**9.** In addition to the videos referenced in the e-mails between Mr. Genin and the YVM Oper-

ator, the affidavit discusses two sets of allegedly pornographic videos and provides very generalized descriptions of these videos. One set is composed of those videos pandered on the YVM websites; the other set is the "150 movies seized from [the YVM] O[perator]," *see* Calhoun Affirm. Exh. C ¶ 10.

**10.** The same problem arises with respect to the 150 videos allegedly seized from the YVM Operator. The affidavit does not explain whether any non-pornographic videos were seized from the YVM Operator and, if so, how many. Thus, the affidavit provides no way of approximating whether the 150 seized videos were a large or small a percentage of the total number of videos, proscribed and, potentially, non-proscribed, seized from the. YVM Operator.

communicated with an individual, who possessed child pornography, regarding videos depicting behavior that might—or might not—be proscribed as sexually explicit conduct under the child pornography laws. Moreover, and more important, the affidavit fails to provide any reasoned method, based on facts and conduct particular to Mr. Genin, to differentiate between these two possibilities. Mere suspicion or surmise that Mr. Genin was soliciting videos showing sexually explicit conduct is insufficient to establish probable cause. *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir.2008).

It bears emphasis that this was not a case in which law enforcement officers "need a certain amount of latitude" in conducting the investigation. *United States v. Coreas*, 419 F.3d 151, 158 (2d Cir.2005) (internal quotation marks and citation omitted). The unnamed FBI analyst admittedly had access to the videos referenced in Mr. Genin's e-mails to the YVM Operator. The agent who prepared the affidavit could have simply appended screenshots of the videos to his affidavit or included in the affidavit a reasonably detailed description of those videos, thus allowing the issuing magistrate—an impartial and independent judicial officer—to determine whether probable cause existed. *See Gates*, 462 U.S. at 239, 103 S.Ct. 2317 (noting that a warrant affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause" and that "wholly conclusory statement[s] . . . fail[ ] to meet this requirement").

Accordingly, because the affidavit did not provide sufficient information for the magistrate to make an independent determination that the videos referenced in Mr. Genin's e-mails to the YVM Operator contained sexually explicit conduct, this Court holds that the magistrate lacked a substantial basis for issuing the search warrant. *See Gates*, 462 U.S. at 236, 103 S.Ct. 2317.

The Court turns to whether the good-faith exception to the exclusionary rule applies under these circumstances.

### 3. The Good–Faith Exception Applies

 The Supreme Court has held that the "marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The so-called good-faith exception to the exclusionary rule, recently reaffirmed in *Herring v. United States*, —— U.S. ——, 129 S.Ct. 695, 699–702, 172 L.Ed.2d 496 (2009), asks "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405. Given this inquiry, there typically are

> four circumstances in which the good-faith exception does not apply: (1) "where the issuing [judge] has been knowingly misled; (2) where the issuing [judge] wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; (4) where the warrant is so facially deficient [such as by failing to particularize the place to be searched or the things to be seized] that reliance upon it is unreasonable."

*Falso*, 544 F.3d at 125 (quoting *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.1992)). When one or more of these circumstances is present, a well trained officer could not reasonably rely on the magistrate's authorization of the search. *Id.*

Mr. Genin submits that his case falls within the third circumstance—that the warrant affidavit was so lacking in indicia of probable cause that reliance on it was unreasonable. He notes that the affidavit did not describe or attach the alleged child pornography, but instead merely stated summarily that an unknown analyst of unstated qualifications and experience had determined that the videos contained child pornography.

 Although the Court recognizes the deficiencies to which Mr. Genin points, the Court cannot agree that the affidavit was so lacking in indicia of probable cause that reliance upon it was objectively unreasonable. As discussed above, the requirement that, in the lasciviousness context, law enforcement officials append to the warrant affidavit, or include therein a reasonably detailed description of, the allegedly proscribed material is relatively new and, at least within the Second Circuit, "unclear." *Jasorka*, 153 F.3d at 61, Indeed, as far as this Court is aware, this requirement had not been applied in this district at the time that the warrant was executed to overturn a probable cause determination. Furthermore, the problem with the warrant affidavit in this case—the agent's bare conclusion that videos contained "child pornography"—is novel in that it is one step removed from the problem described in cases outside of the district, in which the agents had concluded that the allegedly illegal materials were "lascivious"—thus obscuring the import of those cases. *See, e.g., Brunette*, 256 F.3d at 15; *Jasorka*, 153 F.3d at 59. Finally, although probable cause in this case was lacking, the Court believes that it was a close issue and "certainly an issue upon which reasonable minds can differ." *Falso*, 544 F.3d at 128–29. Therefore, the authorities' reliance on the issuing magistrate's probable cause determination was objectively reasonable. *Id.* (concluding that the good-faith exception applied in similar circumstances); *Brunette*, 256 F.3d at 19–20 (same).

In future cases, however, "[h]aving resolved this point, [this Court] would . . . view quite differently an agent's choice to withhold photos from [or fail to provide a reasonably detailed description to] a judicial officer." *Brunette*, 256 F.3d at 20.

Consequently, the physical evidence seized in this case shall not be suppressed. Mr. Genin's motion to suppress voluntary statements that he made while the authorities were conducting the search, being wholly derivative of his claim that the physical evidence seized during the search must be excluded, also is denied.

**B. Motion for a Bill of Particulars**

Mr. Gemn requests that the Court direct the Government to prepare a bill of particulars. He believes that "[s]ome [seized] videos have been shown to defense counsel during discovery, but it is evident that more videos were seized from [his] apartment at the time that the search warrant was executed." Memorandum of Law In Support of Defendant Richard Genin's Pretrial Motions ("Def.'s Mem.") at 16. Mr. Genin thus requests that the Government make available any additional videos for inspection pursuant to Rule 16 or otherwise prepare a bill of particulars specifying the videos upon which the charges against him are based. The Government responds that it has held a meeting with defense counsel so that counsel could view some of the videos that were obtained from the search of Mr. Genin's apartment, but that counsel has made no further requests of the Government or the FBI agent in charge of the investigation to view additional videos or evidence. The Government affirms that it has and will continue to make available upon request all vid-

eos and any other evidence seized in Mr. Genin's apartment. Mr. Genin's request for a bill of particulars therefore is denied without prejudice to refile should any problems arise.

## C. Discovery Requests

Mr. Genin's motion for early disclosure of materials under *Giglio*,[11] the Jencks Act, 18 U.S.C. § 3500, and Rule 404(b) is denied. The Government has represented to the Court that it has complied, and will continue to comply, with its *Brady* obligations and that it will turn over *Giglio* and Jencks Act, 18 U.S.C. § 3500, materials in time for effective use. *See In re United States v. Coppa*, 267 F.3d 132, 147 (2d Cir.2001) ("We reiterate the longstanding constitutional principle that as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."); *United States v. Trippe*, 171 F.Supp.2d 230, 237–38 (S.D.N.Y.2001) ("The usual practice in this district is that the Government agrees to make impeachment information available to the defense at the same time as Jencks Act Material, that is, at least one day before the Government witness is called to testify."). The Government has indicated that it will make the required disclosure two weeks prior to trial, a practice that typically comports with Rule 404(b). *See United States v. Fennell*, 496 F.Supp.2d 279, 284 (S.D.N.Y.2007).

Mr. Genin's request for disclosure of the Government's witness and exhibit lists also is denied. *See United States v. Cannone*, 528 F.2d 296, 301 (2d Cir.1975) (holding that, absent a specific showing of reasonableness and materiality to the preparation of a defense, the defendant is not entitled to disclosure of the Government's witnesses); *United States v. Falkowitz*, 214 F.Supp.2d 365, 392 (S.D.N.Y.2002) (disclosure of exhibit list is within the sound discretion of the district court and is typically ordered if there are voluminous documents).

## Conclusion

For the foregoing reasons, the Court denies Mr. Genin's pretrial motions. The magistrate did hot have a substantial basis for finding probable cause to issue a warrant. The warrant affidavit neither appended nor described in reasonably specific detail the allegedly proscribed videos, and thus it did not allow the magistrate independently to evaluate the videos, as required by the Fourth Amendment. The warrant affidavit, however, was not so lacking in indicia of probable cause that a reasonably well trained agent would have known that the search was illegal despite the magistrate's authorization. Accordingly, the Court finds that the good-faith exception applies, and the evidence shall not be excluded.

The Clerk of the Court is directed to close docket entry number 13.

*It is so ordered.*

---

**11.** *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).