781 N.W.2d 60 (2010)
279 Neb. 648
STATE of Nebraska, appellee,
v.
Tyler R. NUSS, appellant.
No. S-09-546.
Supreme Court of Nebraska.
April 9, 2010.
*63 Arthur S. Wetzel, of Anderson, Vipperman, Kovanda & Wetzel, Grand Island, and Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellant.
Jon Bruning, Attorney General, and George R. Love, Midland, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*64 STEPHAN, J.
After a stipulated bench trial, Tyler R. Nuss was convicted of possession of visual depictions of sexually explicit conduct which has a child as one of its participants or portrayed observers, in violation of Neb.Rev.Stat. § 28-813.01 (Reissue 2008). Over Nuss' objection, the trial court received evidence obtained during a search of his residence which was conducted pursuant to a search warrant. The court had previously denied Nuss' motion to suppress that evidence, concluding that the affidavit filed in support of the search warrant application provided sufficient probable cause for the warrant. Nuss now appeals the denial of his motion to suppress and the use of the evidence obtained during the search at his trial.

BACKGROUND
On December 18, 2007, Sgt. J. McCoy of the Nebraska State Patrol completed an affidavit in support of his application for a warrant to search the Nuss residence in Grand Island, Nebraska. In the affidavit, McCoy stated that he had reasonable grounds to believe that "[v]isual depictions of received files or other computer graphic files which depict children in a sexually explicit manner, as defined by Neb. Rev. Statute Sec. 28-1463.02," were concealed or kept in the residence.
As probable cause for the warrant, McCoy cited his work history with the State Patrol, including his participation in investigations relating to the sexual exploitation of children and his observation of "numerous examples of child pornography in all forms of media including computer media." McCoy also described two Federal Bureau of Investigation (FBI) undercover investigations through which files stored on a computer at the Nuss residence were surreptitiously viewed from a remote location. In the first of these investigations, conducted on October 29, 2007, an FBI analyst downloaded 12 files from a specific "IP address" utilizing a peer-to-peer file-sharing program. According to McCoy, the analyst determined that 10 of the downloaded files contained "child pornography." Through an administrative subpoena, the IP address was traced to the Nuss residence. In the second undercover investigation, conducted on November 9, an FBI special agent downloaded 28 files from another IP address traced to the Nuss residence. Based upon his review, McCoy concluded that 20 of the files contained what "appear[ed] to be child pornography." McCoy did not describe any of the images downloaded, nor did he attach copies of the images to the affidavit. Rather, he stated:
There is probable cause to believe that a search of this premise[s] will result in the seizures of evidence relating to the possession, receipt, transmission, and distribution of images depicting the sexual performance by a child less than eighteen years of age in violation of Nebraska State statute 28-1463.01 and 28-1463.05.
McCoy concluded the affidavit by stating, "Based on prior experience and training, affiant believes that the above described residence and or outbuildings and vehicles contain visual depictions of received files or other computer graphic files which depict children in a sexually explicit manner. . . ."
The requested search warrant was issued by a county judge on December 18, 2007. On the same day, McCoy and other officers conducted a search of the Nuss residence and seized various items, including a computer. They discovered 38 files on the computer, described as "depicting children under the age of 18 engaged in masturbation, real or simulated oral sex, [and] anal sex." During the search, Nuss *65 admitted that he downloaded certain images. Nuss was subsequently charged with possession of visual depiction of sexually explicit conduct, in violation of § 28-813.01.
Nuss filed a motion to suppress all items seized from his residence; the motion was filed on various grounds, including that McCoy's affidavit did not state facts sufficient to constitute probable cause for issuance of the search warrant. The district court overruled the motion, noting that while McCoy did not use statutory language to describe the images claimed to constitute probable cause, "in a common sense review there is sufficient information available from the totality of the circumstances to indicate to the issuing magistrate a fair probability that there was evidence of a crime located at the particular place as cited in the Affidavit."
The parties agreed to a bench trial on stipulated facts. Nuss renewed his motion to suppress, which was again overruled, and the court received the evidence obtained as a result of the search. The court found Nuss guilty of knowingly possessing visual depictions of sexually explicit conduct, as defined by Neb.Rev.Stat. § 28-1463.02(5) (Reissue 2008), in violation of § 28-813.01. Nuss was sentenced to 18 months' probation and ordered to register as a sex offender under Nebraska's Sex Offender Registration Act.[1]

ASSIGNMENTS OF ERROR
Nuss assigns, consolidated and restated, that the district court erred in overruling his motion to suppress and in finding him guilty on the basis of the evidence to which his motion was addressed.

STANDARD OF REVIEW
In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination.[2]

ANALYSIS

SUFFICIENCY OF AFFIDAVIT
The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . .," and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution provides similar protection.[3] The execution of a search warrant without probable cause is unreasonable and violates these constitutional guarantees.[4] Accordingly, a search warrant, to be valid, must be supported by an affidavit which establishes probable cause.[5] Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of *66 a crime will be found.[6] Proof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at the time.[7] In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test.[8] The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.[9]
In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.[10] Here, McCoy requested that the issuing magistrate find probable cause based upon McCoy's description of the files and images which the FBI obtained from Nuss' computer in its undercover investigation. Our review is guided by the principle that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."[11]
In similar cases where computer images surreptitiously obtained by law enforcement have been relied upon as probable cause for a search warrant, courts have taken differing approaches regarding the degree of specificity which must be used in describing the images to the issuing magistrate. In U.S. v. Brunette,[12] the court held that an officer's description of images as meeting the federal statutory definition of child pornography was insufficient to establish probable cause. The court reasoned that this was simply a conclusion of the officer, unaccompanied by any factual specification of the officer's reasons for believing that the images were pornographic. Noting the "inherent subjectivity" of this determination, the court concluded that the magistrate should have viewed the actual images in order to make an independent determination of whether they depicted child pornography so as to establish probable cause for the search.[13] Similarly, in U.S. v. Genin,[14] the court held that an affidavit which described videos in the defendant's possession merely as "child pornography" was insufficient to permit the magistrate to make an independent determination of probable cause. The court noted that the affiant "could have simply appended screenshots of the videos to his affidavit or included in the affidavit a reasonably detailed description of those videos, thus allowing the issuing magistratean impartial and independent judicial officerto determine whether *67 probable cause existed."[15]
Other courts require less specificity. For example, in U.S. v. Lowe,[16] the court found that an affiant's description of the images established probable cause, reasoning that, as a general rule, "an issuing court does not need to look at the images described in an affidavit in order to determine whether there is probable cause to believe that they constitute child pornography. A detailed verbal description is sufficient." In U.S. v. Chrobak,[17] the affiant described images sent by the defendant to a newsgroup Web site known to be frequented by child pornographers and pedophiles as depicting "`sexually explicit conduct involving children under the age of 16.'" The court determined that this description was sufficient to establish probable cause, noting that it was almost identical to the language of the federal statute[18] under which the defendant was charged with possession and transport in interstate commerce of child pornography. In U.S. v. Stults,[19] the court reviewed an affidavit which included the descriptive names of files obtained from the defendant's computer by law enforcement using file-sharing software; such filenames included "Photo by Carlpedo incest 13yr girl f* * * *d by daddy." The affiant also stated that the files contained "`numerous images of child pornography.'"[20] The court held this was sufficient to establish probable cause. We note that the term "child pornography" is specifically defined in the federal criminal statutes.[21]
We now hold as a matter of first impression that, while copies of images obtained during a law enforcement investigation may be used to establish probable cause to search for evidence of crimes involving visual depiction of sexually explicit conduct involving minors, they are not absolutely required. Probable cause may also be established by a detailed verbal description of the conduct depicted in such images. Under this standard, the affidavit in this case was insufficient to establish probable cause. In the affidavit, McCoy stated that he expected to find "images depicting the sexual performance by a child less than eighteen years of age in violation of Nebraska State statute 28-1463.01 and 28-1463.05" if the requested search warrant for the Nuss residence were issued. But he did not utilize language from these statutes in describing the files and images he relied upon to establish probable cause for the warrant. Instead, McCoy referred to filenames "which are consistent with child pornography" and images which "appear to be child pornography" without stating the actual filenames or describing the particular conduct depicted in the images. These are mere conclusions. Unlike its federal counterpart, Nebraska's Child Pornography Prevention Act[22] does not define the phrase "child pornography." Instead, § 28-1463.02(5) defines the phrase "[s]exually explicit conduct," as used in the statute under which Nuss was charged, to include very specific sexual acts, such as "[r]eal or simulated intercourse," "real or *68 simulated masturbation," and "erotic fondling." McCoy's affidavit does not use or even refer to the statutory definitions of sexually explicit conduct in describing the images intercepted during the undercover investigation and relied upon as probable cause for the requested search warrant. And as noted, the actual images did not accompany the affidavit. On this record, we must conclude that the affidavit lacked factual information upon which the issuing magistrate could make an independent assessment of McCoy's conclusions that the files and images constituted "child pornography" or his belief that a search would yield depictions of children "in a sexually explicit manner." Accordingly, the affidavit was insufficient to establish probable cause for the issuance of the search warrant.

GOOD FAITH EXCEPTION
Our determination that the warrant was issued without a showing of probable cause does not end the inquiry, because the State has preserved the issue of whether, notwithstanding the defective affidavit, the evidence obtained during the search is admissible under the good faith exception to the exclusionary rule first recognized in United States v. Leon.[23] The good faith exception provides that even in the absence of a valid affidavit to support a search warrant, evidence seized under the warrant need not be suppressed when police officers act in objectively reasonable good faith in reliance upon the warrant.[24] Evidence may be suppressed if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his or her judicial role, (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.[25] In Leon, the Supreme Court noted that "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of the exclusionary rule.[26] The Court recently provided further guidance on this point, writing in Herring v. U.S.[27]:
To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.
In this case, Nuss argues that McCoy's affidavit was "so lacking in a factual basis that his belief in the legitimacy of the resulting search warrant was *69 entirely unreasonable."[28] He notes that while a court in assessing an officer's good faith in conducting a search pursuant to a warrant may consider the totality of the circumstances surrounding the issuance of the warrant including information not contained within the four corners of the affidavit, there is no such evidence in this case.
But we are not persuaded that the deficiency in the affidavit precludes application of the good faith exception. In U.S. v. Jasorka,[29] the court concluded that it need not decide whether a magistrate in issuing a search warrant was justified in relying upon an affiant's assertion that intercepted images depicted "`male children displaying a lewd and lascivious exhibition of the genitals and pubic areas,'" because the law on this point was unclear and the conduct of the customs agents who executed the warrant was objectively reasonable under Leon. In U.S. v. Brunette,[30] the court specifically determined that the description of intercepted images in an affidavit was insufficient to establish probable cause but employed the Jasorka reasoning in concluding that the good faith exception applied.
We think the same principle applies here. Until our holding in this case, it was not clear under Nebraska law that labeling intercepted computer images as "child pornography" was insufficient, standing alone, to establish probable cause to search for evidence of visual depiction of sexually explicit conduct involving minors. We acknowledge the observation of the district court that the phrase "child pornography" has a commonly accepted meaning, and the existence of some federal case law indicating that an affidavit describing intercepted images as "child pornography" is sufficient to establish probable cause for a search warrant.[31] While our decision today turns in part on the fact that the applicable Nebraska criminal statutes, unlike their federal counterparts, do not include a definition of "child pornography," we cannot expect that a state trooper executing an affidavit in 2007 would have anticipated this distinction. Under the good faith exception as defined in Leon and refined by Herring, we conclude that McCoy acted in reasonable good faith and that his conduct was neither sufficiently deliberate nor culpable to trigger the exclusionary rule. Accordingly, we conclude that the district court did not err in overruling Nuss' motion to suppress and receiving the evidence obtained pursuant to the search warrant over Nuss' objection.

CONCLUSION
For the reasons discussed, we affirm the judgment of the district court.
AFFIRMED.
HEAVICAN, C.J., concurring.
I agree with the majority's holding that while copies of images obtained during a law enforcement investigation may be used to establish probable cause to search for evidence of crimes involving visual depiction of sexually explicit conduct involving minors, they are not absolutely required. Probable cause may also be established by a detailed verbal description of the conduct depicted in such images.
I write separately because contrary to the majority's holding, I would find that the *70 affidavit in this case was sufficient to establish probable cause under the above standard.
The affidavit in support of the search warrant in this case indicated that investigating officers observed images which "contained child pornography" and that filenames attached to some of those images were "consistent with child pornography." The averring officer noted that if the search warrant were issued, he expected to find "images depicting the sexual performance by a child less than eighteen years of age in violation of Nebraska State statute 28-1463.01 and 28-1463.05."
In support of its conclusion that McCoy's affidavit did not establish probable cause, the majority relies in part on the fact that the term "child pornography" is not defined by the Child Pornography Prevention Act and that, instead, a violation of Neb.Rev.Stat. § 28-1463.05 (Reissue 2008) occurs when one possesses materials that visually depict children engaged in "sexually explicit conduct." Thus, the majority concludes that McCoy's references to only "child pornography" are insufficient to establish probable cause.
While I would agree with the majority that "child pornography" is not defined by the act, I would disagree that McCoy's reference to that term fails to establish probable cause. It is clear that the purpose of the act as a whole is to criminalize the possession or creation of "child pornography." For example, as is provided by Neb.Rev.Stat. § 28-1463.01 (Reissue 2008), the name of the act under which the prohibition against possession of materials depicting "sexually explicit conduct" is the "Child Pornography Prevention Act."
Moreover, child pornography certainly has a generally accepted meaning. "Pornography" is defined as "[m]aterial . . . depicting sexual activity or erotic behavior in a way that is designed to arouse sexual excitement,"[1] while "child pornography" is defined as "[m]aterial depicting a person under the age of 18 engaged in sexual activity."[2] And these definitions are certainly consistent with "sexually explicit conduct" as envisioned by Neb.Rev.Stat. § 28-1463.02(5) (Reissue 2008).
McCoy's affidavit plainly sets forth that two investigating officers, both special agents with the FBI, downloaded and viewed visual depictions which the officers determined were child pornography and that those files were traced to an IP address registered to Nuss. That affidavit also indicated that McCoy believed that more items constituting child pornography in violation of the act were likely to be found in a search of Nuss' home.
As noted above, "child pornography" has a generally accepted definition and that definition is certainly consistent with the meaning of "sexually explicit conduct." McCoy's affidavit referred to the applicable statutes. In addition, McCoy averred that he had previous experience with "investigations relating to the sexual exploitations of children" and had previously "observe[d] and review[ed] numerous examples of child pornography," including the images in this case. And, similar conclusions were also reached by both FBI agents. To paraphrase U.S. v. Chrobak,[3] an Eighth Circuit Court of Appeals case with similar facts, it is unlikely that the issuing judge would have disagreed with the affiant's characterization of the images reviewed by the affiant as child pornography, *71 and it is likewise unlikely that the issuing judge would have concluded that the images were not encompassed by the definition of "sexually explicit conduct" as set forth in § 28-1463.02(5).
For the above reasons, I would find that probable cause was established and I would affirm on this basis. I therefore concur in the judgment of the court.
NOTES
[1] Neb.Rev.Stat. §§ 29-4001 to 29-4014 (Reissue 2008).
[2] State v. Hedgcock, 277 Neb. 805, 765 N.W.2d 469 (2009).
[3] See, Neb. Const. art. I, § 7; State v. Bakewell, 273 Neb. 372, 730 N.W.2d 335 (2007).
[4] State v. Swift, 251 Neb. 204, 556 N.W.2d 243 (1996).
[5] State v. Bossow, 274 Neb. 836, 744 N.W.2d 43 (2008).
[6] Id.
[7] Id.; State v. Ildefonso, 262 Neb. 672, 634 N.W.2d 252 (2001).
[8] State v. Bossow, supra note 5; State v. Ildefonso, supra note 7.
[9] State v. Bossow, supra note 5; State v. Lammers, 267 Neb. 679, 676 N.W.2d 716 (2004).
[10] State v. Lammers, supra note 9.
[11] Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
[12] U.S. v. Brunette, 256 F.3d 14 (1st Cir. 2001).
[13] Id. at 18.
[14] U.S. v. Genin, 594 F.Supp.2d 412 (S.D.N.Y. 2009).
[15] Id. at 425.
[16] U.S. v. Lowe, 516 F.3d 580, 586 (7th Cir. 2008).
[17] U.S. v. Chrobak, 289 F.3d 1043, 1045 (8th Cir.2002).
[18] See 18 U.S.C. § 2252 (2006).
[19] U.S. v. Stults, 575 F.3d 834, 838 (8th Cir. 2009).
[20] Id. at 844.
[21] 18 U.S.C. § 2256(8) (2006).
[22] Neb.Rev.Stat. §§ 28-1463.01 to 28-1463.05 (Reissue 2008).
[23] United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). See, also, State v. Tompkins, 272 Neb. 547, 723 N.W.2d 344 (2006), modified on denial of rehearing 272 Neb. 865, 727 N.W.2d 423 (2007).
[24] State v. Tompkins, supra note 23; State v. Johnson, 256 Neb. 133, 589 N.W.2d 108 (1999), overruled on other grounds, State v. Davidson, 260 Neb. 417, 618 N.W.2d 418 (2000). See, also, United States v. Leon, supra note 23.
[25] State v. Tompkins, supra note 23; State v. Edmonson, 257 Neb. 468, 598 N.W.2d 450 (1999). See, also, United States v. Leon, supra note 23.
[26] United States v. Leon, supra note 23, 468 U.S. at 911, 104 S.Ct. 3405.
[27] Herring v. U.S., ___ U.S. ___, 129 S.Ct. 695, 702, 172 L.Ed.2d 496 (2009).
[28] Reply brief for appellant at 5.
[29] U.S. v. Jasorka, 153 F.3d 58, 59 (2d Cir. 1998).
[30] U.S. v. Brunette, supra note 12.
[31] See, U.S. v. Stults, supra note 19; U.S. v. Grant, 434 F.Supp.2d 735 (D.Neb.2006).
[1] Black's Law Dictionary 1279 (9th ed.2009).
[2] Id.
[3] U.S. v. Chrobak, 289 F.3d 1043 (8th Cir. 2002).