# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2694
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher D. Brackett

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 19, 2016
Filed: January 20, 2017
_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

A federal grand jury returned a superseding indictment charging Christopher D. Brackett with transporting, producing, and attempting to produce child pornography and with possessing one or more computer files and other matter containing child pornography, all after having been previously convicted of a state-law offense involving the sexual abuse of a minor. 18 U.S.C. §§ 2252A(a)(1) & (b),

2251(a), 2252(a)(4)(B). The district court[1] denied Brackett's motion to suppress evidence seized from his residence pursuant to a search warrant, as well as his later motion for an evidentiary hearing to challenge allegedly false statements included in the search-warrant affidavit. A jury convicted Brackett of the charged offenses, and the district court sentenced him to 360 months of imprisonment and 240 months of supervised release. Brackett appeals, arguing that the court erred in denying his motion to suppress and his motion for an evidentiary hearing. We affirm.

On September 17, 2013, Detective Roy Howell of the Bellevue, Nebraska, Police Department applied for a warrant to search Brackett's residence. The warrant application included a seven-page affidavit in which Howell set forth the following facts. Earlier that day, Howell, a member of the Cyber Crimes Task Force, had spoken with Investigator Michael Gunias of the Cuyahoga County, Ohio, prosecutor's office. Gunias told Howell that R.H., a sixteen-year-old girl who lived in Ohio, had reported that Christopher Allen Brackett, a dark-haired white male standing 5'11" to 6' tall and weighing 150 to 185 pounds, had twice traveled to Ohio from his home in Nebraska to meet her; that she and Brackett had engaged in sexual intercourse at a hotel on both occasions; and that Brackett had taken nude photographs of her with his cell phone.

R.H. and Brackett had begun communicating in May 2013 while playing an online video game, had eventually exchanged cell phone numbers, and had then begun communicating through text messages and calls on their respective cell phones. Brackett told R.H. that his name was Christopher Allen Brackett; that he lived in Omaha, Nebraska; that he was thirty-six years old; that he owned a truck and a Jeep; and that he had a younger brother. In late June 2013, Brackett drove to Ohio to meet

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, adopting the Findings and Recommendation of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

R.H. in person. Brackett arrived to pick R.H. up in a black Jeep SUV with Nebraska license plates and drove her to a local hotel, where he had rented a room. The two stayed at the hotel for one night and engaged in sexual intercourse.

R.H. attempted to end her relationship with Brackett in July 2013, but changed her mind after Brackett threatened and pleaded with her. Fearful of Brackett's reaction if she refused, R.H. agreed to another visit from Brackett. In August 2013, Brackett again drove from Nebraska to Ohio to meet R.H., this time driving a yellow Chevy Cavalier with tinted windows and racing stripes. Brackett drove R.H. to the same hotel, where Brackett had reserved a room for three nights. Brackett and R.H. stayed at the hotel together for two nights and again engaged in sexual intercourse. Brackett used his cell phone to take nude photographs of R.H. After two days at the hotel, Brackett drove R.H. back to her parents' house. Sometime later, Brackett told R.H. that he had transferred the photographs from his cell phone to a flash drive.

R.H. again attempted to end her relationship with Brackett. In response, Brackett threatened to erase her parents' social security numbers, to have warrants issued for her parents' arrest, and to send nude photographs of her to her parents and her high school. Eventually, Brackett posted a series of nine advertisements on Craigslist in the Ohio area where R.H. lived. Each of these advertisements implied that R.H. was available for sexual activity and included her name, cell phone number, address, and photograph. R.H. received several calls and texts on her cell phone in response to these advertisements.

Gunias obtained a photograph of Brackett from the Nebraska Sex Offender Registry, and R.H. confirmed that the Christopher Brackett in the photograph was the individual who was the subject of her report. Brackett sent multiple text messages to R.H.'s phone after R.H. had surrendered it to Gunias. Gunias informed Howell of this activity and provided him with Brackett's cell phone number.

Detective Howell then took steps to corroborate the information he had obtained from Guinas. Howell first searched Brackett's name in the Nebraska Criminal Justice Information System, which revealed that Brackett had previously used the "Christopher Allen Brackett" alias he had provided to R.H. Howell also identified a Bellevue, Nebraska, address from Brackett's state driver's license and determined that Brackett's cell phone number was registered to an individual at that address and that a black 2002 Jeep Grand Cherokee was registered to Brackett at that address. Howell learned that Brackett was required to register as a sex offender because of a 2002 Iowa conviction for possessing a videotape that he made of a 15-year-old girl performing a sex act on him. Howell also discovered that Brackett had been convicted in February 2012 for failing to register as a sex offender in Nebraska, but that he now listed the Bellevue address as his current residence in the Nebraska Sex Offender Registry. Howell confirmed that Brackett had a younger brother, and he also learned that a different female victim had reported that Brackett had posted false Craigslist advertisements in her name that were similar to those Brackett had made in R.H.'s name.

Detective Howell included the affidavit in his application for a warrant to search Brackett's residence and vehicles for "any type of digital media," including computers, cell phones, and USB and external storage devices, that could contain "[i]mages of the child pornography of the victim who is 16 years old." The affidavit set forth in detail Howell's training and experience in child-pornography investigations, and then provided comprehensive background information on the use of computers and mobile devices like cell phones to produce child pornography, and the use of removable or online storage devices and services to possess child pornography. It twice stated Howell's belief that the facts set forth in the affidavit established probable cause to believe that a search of Brackett's residence for digital media would result in "evidence showing violation(s) of Nebraska State Statute[] 28-813.01 Sexually Explicit Conduct."

-4-

Based on Howell's September 17 affidavit, a Nebraska state judge issued a search warrant, which Howell and other Bellevue police officers executed later that evening. The officers seized from Brackett's residence his cell phone, laptop computer, and desktop computer. A forensic examination of these devices uncovered sexually explicit images of R.H. on the laptop and desktop computers; the cell phone had been "wiped" and returned to factory settings. When Brackett was arrested by Bellevue police officers on October 7, 2013, he was in possession of a different cell phone, which Howell also seized and later examined. That examination led to the recovery of the text messages between Brackett and R.H., as well as additional sexually explicit images of R.H.

The matter was eventually referred to federal authorities, and Brackett was indicted by a federal grand jury on the three offenses set forth above. Brackett filed a motion to suppress the evidence seized during the search of his residence, arguing that the affidavit in support of the warrant was insufficient to establish probable cause to believe that there would be illegal contraband discovered at his residence. Following a hearing, the magistrate judge recommended that the motion be denied because under applicable federal constitutional standards the "affidavit contained probable cause that images of child pornography of R.H. on digital media storage devices would be found at" Brackett's residence. The magistrate judge further reasoned that even if the affidavit was insufficient, the officers' reliance on the search warrant was objectively reasonable such that the Leon good-faith exception applied. See United States v. Leon, 468 U.S. 897 (1984). As earlier stated, the district court adopted the magistrate judge's recommendations and denied the motion to suppress, following which the case proceeded to trial.

During, and again at the close of, the government's case-in-chief, Brackett moved for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). He alleged that it had become apparent from their testimony that R.H., Investigator Gunias, and Detective Howell had not actually seen the photographs Brackett

-5-

allegedly had taken of R.H., and thus they could not be sure that any such photographs existed or that they constituted prohibited images. Brackett further alleged that this testimony revealed that because R.H. had not admitted to Gunias that she had sent nude photographs of herself to Brackett until after the search warrant was executed, Howell's reference to any such photographs in his affidavit was a fabrication. Thus, Brackett argued, Howell's affidavit omitted a material fact and included a deliberate false statement, each of which was sufficient to defeat probable cause for issuance of the warrant. The district court denied the motion for a Franks hearing.

"We review the denial of a motion to suppress *de novo* but review underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials." United States v. Hager, 710 F.3d 830, 835 (8th Cir. 2013) (quoting United States v. Nichols, 574 F.3d 633, 636 (8th Cir. 2009)). We will affirm "unless the district court's decision 'is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" Id. (quoting United States v. Hastings, 685 F.3d 724, 727 (8th Cir. 2012)).

Brackett first argues that Howell's affidavit was insufficient to establish probable cause under the standards announced by the Nebraska Supreme Court in State v. Nuss, 781 N.W.2d 60, 67-68 (Neb. 2010). Relying on the Fourth Amendment to the U.S. Constitution, the Nebraska Supreme Court held in Nuss that, "to establish probable cause to search for evidence of [state-law] crimes involving visual depiction of sexually explicit conduct involving minors," a supporting affidavit must include either copies of the images themselves or "a detailed verbal description of the conduct depicted in [those] images." Id. at 67. Brackett argues that Nuss is controlling with respect to the validity of the affidavit, because Detective Howell was a state police officer applying for a state search warrant in a state court to search for evidence of a state crime. Because Howell's affidavit did not include the photographs of R.H. and

only described them as "child pornography" or "nude" photographs, the affidavit was insufficient to establish probable cause.

We conclude that the facts set forth in the affidavit in this case are readily distinguishable from those that the Nebraska Supreme Court found insufficient to establish probable cause in Nuss. First, the warrant in Brackett's case relied upon a different (although related) Nebraska statute, § 28-813.01, which renders unlawful the knowing possession of "any visual depiction of sexually explicit conduct . . . which has a child . . . as one of its participants or portrayed observers." The affidavit then specifically referred to "sexually explicit conduct," the critical statutory recital absent in Nuss, by recounting, as set forth earlier, R.H.'s description of how Brackett had engaged in sexual intercourse with her on two separate occasions, during which he had taken nude photographs of her. Finally, and perhaps most important to our analysis, Nebraska statute § 28-1463.02(5) defines sexually explicit conduct to include "Real or simulated intercourse," which is precisely the conduct that R.H. described, and the lack of which vitiated the affidavit in Nuss. 782 N.W.2d at 68. Given the additional information contained in Detective Howell's affidavit, we conclude that the Nebraska Supreme Court would have no difficulty in upholding the validity of the warrant under the analysis set forth in Nuss.

A supporting affidavit establishes probable cause to issue a search warrant if it "sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Snyder, 511 F.3d 813, 817 (8th Cir. 2008); see also United States v. Berkus, 428 F.2d 1148, 1152 (8th Cir. 1970) (noting that "the Fourth Amendment contains no prescription as to the form or manner in which probable cause must be shown"). "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.'" United States v. Brewer, 588 F.3d 1165, 1170 (8th Cir. 2009) (quoting United States

v. Hansel, 524 F.3d 841, 845 (8th Cir. 2008)). Not only may an issuing judge "draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, we have also recognized that law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant." United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000) (citations omitted). We will not disturb a court's finding of probable cause "unless there was no substantial basis for that finding." United States v. Montgomery, 527 F.3d 682, 686 (8th Cir. 2008). Because the warrant in this case sought evidence of a violation of Nebraska Revised Statute § 28-813.01, we must determine whether, in the totality of the circumstances, the affidavit established probable cause that evidence of such a violation would be found at Brackett's residence. Section 28-813.01 prohibits the knowing possession of "any visual depiction of sexually explicit conduct" involving a minor. "Sexually explicit conduct" is defined to include "erotic nudity," which "means the display of the human . . . female genitals or pubic area [or] breasts" for "sexual gratification or sexual stimulation." Neb. Rev. Stat. § 28-1463.02.

We agree with the district court that the information set forth in the affidavit in this case established probable cause to believe that Brackett's residence would contain evidence of the prohibited images of R.H. The affidavit was based on information provided to police officers by R.H., the sixteen-year-old victim, who identified herself to officers and voluntarily provided a detailed statement regarding her interactions with Brackett—including that Brackett had driven from Nebraska to Ohio on two occasions, that she and Brackett had engaged in sexual intercourse on both occasions, that Brackett had taken several nude photographs of her with his cell phone, and that she had sent an additional forty to fifty nude photographs of herself to Brackett's cell phone. The affidavit indicated that Howell had corroborated much of R.H.'s report, confirming the information she provided about Brackett's name, age, cell phone number, vehicles, and younger brother. The affidavit also stated that R.H. had identified Brackett from a photograph obtained from the Nebraska Sex Offender

-8-

Registry. The affidavit explained the specific circumstances leading to Brackett's status as a registered sex offender. The affidavit also described Brackett's posting of a Craigslist advertisement in R.H.'s area that included her photograph, cell phone number, and address and explained that police had received a report from another female victim complaining of similar conduct by Brackett. The affidavit further identified the criminal activity at issue, citing the Nebraska statute Brackett had allegedly violated. Given the sexual relationship between Brackett and R.H., his status as a registered sex offender, and the details of the crime resulting in that status, the issuing judge could reasonably infer that the "child pornography" or "nude photographs" of R.H. described in the affidavit were prohibited images of sexually explicit conduct involving a minor. See, e.g., United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002) (noting that we consider all of the facts set forth in an affidavit "for their cumulative meaning"); see also Brewer, 588 F.3d at 1170-71 (citing state-law definition of "child pornography" and applying federal Fourth Amendment standards to determine whether the affidavit set forth sufficient detail to provide probable cause that evidence of a state-law violation would be recovered if the warrant issued).

Considering the totality of the circumstances in this case, the information set forth in Howell's affidavit was sufficient to establish a fair probability that prohibited images of R.H. would be found in Brackett's residence and thus enable the issuing judge to determine that probable cause existed to issue the warrant to search Brackett's residence. See Thompson, 210 F.3d at 860 (noting that both issuing judges and affiant officers "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists"). Accordingly, we affirm the district court's denial of Brackett's motion to suppress.

For Brackett to succeed on his mid-trial motion for a Franks hearing, he was required to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant

in the warrant affidavit" and that the allegedly false statement was necessary to the finding of probable cause. Franks, 438 U.S. at 155-56. This substantiality requirement is "not lightly met," and it requires a defendant to offer specific allegations of deliberate falsehood along with supporting affidavits or similarly reliable statements. Id. at 171-72; see United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007). We review the denial of a motion for a Franks hearing for abuse of discretion. United States v. Gonzalez, 781 F.3d 422, 430 (8th Cir.), cert. denied, 136 S. Ct. 139 (2015).

Brackett argues that the trial testimony of R.H., Gunias, and Howell contradicted the information set forth in Howell's affidavit and established that Howell had included facts therein that he could not have known until several days after the warrant was executed. His argument fails, for it is based upon supposition and isolated testimonial statements taken out of context, and so we conclude that the district court did not abuse its discretion by denying the motion.

The judgment is affirmed.

_____