IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WILLIAMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TOMMIE L. WILLIAMS, APPELLANT.

Filed August 4, 2020.    No. A-19-664.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Timothy S. Noerrlinger for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Tommie L. Williams appeals from his conviction for possession of methamphetamine following a jury trial in the district court for Lancaster County. He challenges the court's order overruling his motion to suppress and asserts that his trial counsel rendered ineffective assistance. For the reasons that follow, we affirm the decision of the district court.

BACKGROUND

On August 16, 2018, the State charged Williams with three counts arising from an incident that occurred on or about July 21, 2018:

(1) Deliver or with intent to deliver a controlled substance, methamphetamine, a Class II felony, in violation of Neb. Rev. Stat. § 28-416(1)(2)(A) (Reissue 2016);

(2) Possess firearm by a prohibited person, a Class ID felony, in violation of Neb. Rev. Stat. § 28-1206(1)(3)(B) (Reissue 2016); and

(3) Possess machine gun, short rifle, or shotgun, a Class IV felony, in violation of Neb. Rev. Stat. § 28-1203 (Reissue 2016).

In an affidavit for a search warrant that was later received by the court as an exhibit, Lincoln Police Officer Trevor Schmidt described the events that took place on July 21, 2018. Schmidt stated that he observed two people riding their bicycles in the alley behind 1516 North 27th Street, an address known to be associated with the use and sale of methamphetamine. Schmidt observed the bicyclists violating traffic laws and conducted a traffic stop, during which one of the bicyclists was identified as Eric Bulkowski. Bulkowski consented to a search of his person, and Schmidt identified a pipe used for smoking methamphetamine in Bulkowski's front left pants pocket. Bulkowski admitted that it was a meth pipe, and a subsequent analysis of a swab of the pipe identified the presence of methamphetamine. Bulkowski was arrested and transported to jail where he waived his *Miranda* rights and continued speaking with Schmidt.

Schmidt stated in the affidavit for a search warrant that Bulkowski told him that he waited at 1516 North 27th Street for approximately "20 minutes for 'Tim' to arrive for the purpose of purchasing methamphetamine." Bulkowski described "Tim" as a thin, bald-headed, black male, who was approximately 40 to 50 years old. Bulkowski purchased 0.2 grams worth of methamphetamine for $20 from "Tim," which amounted to "one chunk." He said that he had been purchasing 0.2 grams of methamphetamine from "Tim" at least once per day for approximately a month. Bulkowski melted the methamphetamine in his glass pipe and then left the residence.

Bulkowski said that he saw approximately one-eighth of an ounce of methamphetamine in a bag in the small coin pocket of "Tim's" pants on July 21, 2018. He said that he knew from previous meetings that "Tim" stored additional methamphetamine in a diabetic test strip container that usually sat in the open. Bulkowski also said that during his visits to purchase methamphetamine during the month, he had seen "Tim" possess many knives and two handguns, including one that was "an old western six shooter" that was approximately 12 inches long and one that was much smaller. Bulkowski said that he knew both the front and back doors to "Tim's" apartment were barricaded with steel beams.

Schmidt's affidavit states that he then consulted his Department's records management system and learned that Williams, a 53-year-old black male, lived in apartment No. 1 at 1516 North 27th Street. Schmidt stated in his affidavit that Department records, which were based on prior encounters with Williams, showed that he was known to be a source of methamphetamine, known to possess knives and firearms, and known to barricade his front and back doors with steel beams.

Based on the information contained in the affidavit, which was obtained from interviewing Bulkowski and reviewing Department records, Schmidt applied for the issuance of a search warrant for "1516 N. 27th St. #1." Schmidt stated that apartment No. 1 was on the main floor and had both front and back entrances. He outlined numerous items to be seized, including methamphetamine, drug paraphernalia, documentary evidence of the distribution of controlled substances, cell phones, and any proceeds attributable to the sale of controlled substances. Schmidt

sought the issuance of a no-knock warrant to be executed with support from the Lincoln Police Department Swat Team.

On July 21, 2018, the county court for Lancaster County issued a search warrant in accordance with Schmidt's request. Schmidt executed the warrant of Williams' residence on the same day and inventoried the property seized. The evidence seized included a large mirror with methamphetamine residue, a diabetic test strip bottle with methamphetamine, scales, a marijuana pipe, a meth bong, a revolver, a shotgun, and ammunition.

On January 28, 2019, Williams filed a motion to suppress the evidence that was seized pursuant to the search warrant executed on July 21, 2018. Williams alleged that the facts provided were insufficient for the court to issue a search warrant, that Schmidt's affidavit and application for a search warrant did not provide probable cause for the issuance of a search warrant, that the scope of the search exceeded the scope authorized by the warrant, and that the search and seizure were unreasonable, unlawful, and violated Williams' constitutional protections.

The court held a hearing on Williams' motion to suppress on February 1, 2019. The State called Schmidt, and the court received as exhibit 1 Schmidt's affidavit for a search warrant, the search warrant itself, the search warrant return, and the inventory and receipt of seized property. Williams offered no evidence.

Schmidt testified at the suppression hearing that he completed the affidavit for a search warrant of Williams' residence after speaking with Bulkowski, who had purchased methamphetamine from Williams. Schmidt said that he did not "recall how in-depth" they looked into Bulkowski's background but that many of his statements were corroborated by reviewing Department records from prior contacts with Williams. Schmidt testified that Williams matched the physical description that Bulkowski provided of the man from whom he bought methamphetamine that day. He acknowledged, however, that Bulkowski referred to Williams as "Tim" even though his first name is Tommie. Schmidt testified that he believed Bulkowski responded to his questions truthfully because he was speaking against his own penal interests and because their records confirmed many of the details he provided. Records that identified Williams as possessing firearms and selling methamphetamine from that address were made within the year before Schmidt accessed them. Additionally, Schmidt said that he presented a photo of Williams that did not display his name or any other identifying information, and Bulkowski confirmed that the man in the photo was the man he knew as "Tim."

Schmidt described Williams' residence as being apartment No. 1 in a house that was divided into three apartments. Although Schmidt testified that he did not recall whether Bulkowski ever specifically identified "apartment number one," he said that Bulkowski described Williams' apartment sufficiently for it to be identified as apartment No. 1 in conjunction with existing Department reports. Schmidt said that he did not recall a "Tim" being listed as a resident of any of the other apartments according to the Department records. On cross-examination, Schmidt acknowledged that it was possible that other apartments in the house could have been the one to which Bulkowski referred.

After the court granted a search warrant for Williams' residence, Schmidt said that he and another officer first took Williams into custody before they knocked on his door. A woman removed the barricades from inside the residence, and Schmidt and other officers executed the

search warrant around 6:30 p.m. on July 21, 2018, leaving a copy of the warrant. They observed methamphetamine in plain sight almost immediately upon entry.

Two guns were seized from Williams' residence: a shotgun cut down to a length of approximately 13 inches and "an old school or very old style revolver," according to Schmidt. Schmidt testified that the revolver they seized seemed to conform with Bulkowski's description while the sawed-off shotgun did not. Schmidt acknowledged that Bulkowski told them that the firearms were in Williams' bedroom, but they were actually found in the bathroom ceiling tiles. Schmidt also acknowledged on cross-examination that he "made an error" and "forgot to add the part about the weapons" to his application for a search warrant.

On March 19, 2019, the court overruled Williams' motion to suppress. In ruling from the bench, the court noted that a citizen informant who personally observed the commission of a crime is presumptively reliable and that probable cause is evaluated by the collective information known by investigators, including information obtained from an informant. The court found that the search warrant contained sufficient facts demonstrating Bulkowski's knowledge of Williams' criminal activity and referred to Bulkowski as a citizen informant whose information was subsequently established by independent investigation. The court further found that it was reasonable for officers to search places, including the ceiling tiles, where controlled substances and related items could be found and that such a search led to the discovery of firearms as well.

Also on March 19, 2019, the State filed a motion for leave to amend the information filed against Williams. The court held a hearing on that motion on March 25. The State informed the court that it had made a plea offer to Williams whereby he would plead guilty or no contest to the first and third counts of the original information in exchange for the State dismissing the second count and not pursuing a habitual criminal enhancement. Williams declined that offer. The State told the court that it therefore wished to amend the information to add the habitual criminal allegation. The court sustained the State's motion for leave to amend the information, which amended information the State filed on March 25. At the same hearing on March 25, the court advised Williams of his right to be arraigned at least 24 hours after being served with a copy of the amended information. He waived that right, and the court arraigned him on the amended information. Williams entered not guilty pleas to the charges outlined in the amended information.

A jury trial was held on May 6, 7, and 8, 2019. The State called Bulkowski, Schmidt, and six other law enforcement officers. It also admitted numerous exhibits, including stipulations made jointly with Williams. Williams did not testify and offered no other evidence. The jury subsequently found Williams guilty of the lesser-included offense to count one, that being simple possession of methamphetamine, and not guilty of counts two and three which related to the possession of firearms. We will only recount trial evidence as related to the arguments raised by Williams in this appeal.

Bulkowski testified that Schmidt stopped him on July 21, 2018, while he was bicycling and that he consented to a pat-down of his person, which revealed a pipe containing methamphetamine. He said that he did not tell Schmidt that he purchased methamphetamine from a man named "Tim," but he admitted that he told Schmidt he made the purchase inside the residence located at 1516 North 27th Street. Bulkowski identified Williams in the courtroom as the man who sold him methamphetamine on that date at that residence. He said that he had known

Williams for "a couple of months" prior to July 21, 2018, but did not learn his name "until just recently." Bulkowski identified Williams as his "dealer" who sold him methamphetamine "[a] good handful of times." Bulkowski further stated that he had entered into a plea agreement wherein he was being allowed to plead guilty to a reduced charge of attempted possession of methamphetamine in exchange for his testimony in the case filed against Williams.

Bulkowski was asked about Williams' firearms, and he testified that he had seen Williams have "a little, tiny gun" when they met for the first time but had not seen firearms since then. On cross-examination, Bulkowski was asked whether he was under the influence of methamphetamine, other pills or drugs, or alcohol when he spoke with Schmidt, each of which he denied. However, he said that he had a "slight memory problem" due to "severe concussions." Bulkowski said that his memory problems primarily consisted of names but that he remembers faces and places.

At trial, Schmidt testified to the same basic facts that he had recounted during the suppression hearing. During Schmidt's testimony, Williams objected, stating, "I'd like to renew my objection to the search warrant based on hearsay, and I'd like that to be a continuing objection throughout the rest of his testimony." The court inquired, "So that objection goes to the search warrant and to the application of the search warrant?" Counsel for Williams answered affirmatively, and the court overruled that objection and recognized a continuing objection. Later, following a discussion of whether the objection carried over to other officers' testimony, the court asked, "[Y]ou are objecting to the warrant in and of itself?" Counsel for Williams again answered affirmatively. The court said, "I will show a continuing objection to the validity of the warrant and overrule the objection."

The parties stipulated that residue found on a mirror in Williams' residence was methamphetamine. They also stipulated that a diabetic test strip container found in Williams' residence contained 1.29 grams of methamphetamine.

On May 8, 2019, the jury returned verdicts finding Williams guilty of possession of methamphetamine. Sentencing was held after the court had a presentence investigation report completed and conducted an enhancement hearing, during which the court found Williams to be a habitual criminal. On June 24, the court sentenced Williams to no less than 10 years' imprisonment and no more than 10 years' imprisonment.

Williams now appeals.

ASSIGNMENTS OF ERROR

Williams assigns that the district court erred in overruling his motion to suppress and argues that he was denied effective assistance of trial counsel by his counsel's failures to depose specific witnesses, to file a motion pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and to file a motion for new trial.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Jennings*, 305 Neb. 809, 942 N.W.2d 753 (2020). Regarding historical facts, an appellate court reviews the

trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Jennings, supra*. When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. *Id*.

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. Beehn, supra*.

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## ANALYSIS

*Motion to Suppress*.

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution provides similar protections. See Neb. Const. art. I, § 7. The execution of a search warrant without probable cause is unreasonable and violates these constitutional guarantees. *State v. Nuss*, 279 Neb. 648, 781 N.W.2d 60 (2010). Accordingly, a search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *Id*. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id*. Proof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at the time. *Id*.

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020). The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *Id*. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id*. In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners

of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *Id*.

Williams argues that the district court erroneously denied his motion to suppress. The gist of his argument is that the affidavit does not articulate a firm basis for a search of his particular apartment which was one of three located at 1516 North 27th Street. The State first argues in reply that because Williams only objected at trial to the search warrant on the basis of hearsay, the warrant's reliance on hearsay statements is the only issue preserved for our review on appeal. The State then also argues that the warrant was based on sufficient probable cause as outlined by Schmidt's affidavit in support thereof.

We first address Williams' trial objection. A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and that party will not be heard to complain of the alleged error on appeal. *State v. Tharp*, 22 Neb. App. 454, 854 N.W.2d 651 (2014). On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered at trial. *State v. Huerta*, 26 Neb. App. 170, 917 N.W.2d 175 (2018). At trial, Williams objected to the search warrant based on hearsay, which objection the court overruled and recognized as a continuing objection. However, shortly thereafter, the court also asked Williams whether he was "objecting to the warrant *in and of itself*," which Williams confirmed. (Emphasis supplied.) We therefore conclude that Williams' trial objection was not confined to the issue of hearsay evidence, and we now turn to evaluate his arguments related to probable cause.

Schmidt prepared an affidavit for a search warrant after apprehending and interviewing Bulkowski, who told Schmidt that he had purchased methamphetamine from a man named "Tim" inside 1516 North 27th Street. Schmidt had previously seen Bulkowski riding a bicycle behind that residence. A pipe was found on Bulkowski which field-tested positive for the presence of amphetamine. Schmidt's affidavit further reflects that Bulkowski identified the seller as a thin, bald-headed, black male, approximately 40 to 50 years old. Bulkowski said that the seller stored methamphetamine in a diabetic testing container and possessed numerous firearms and knives. Bulkowski also identified that both the front and back doors to the apartment where he purchased methamphetamine were barricaded with steel beams.

The affidavit then recites that Schmidt utilized police records to determine who lived in the building. He found that a black male named Tommie Williams, born in 1964, lived in apartment No. 1 of 1516 North 27th Street. According to police records, Williams had a documented record of being a source of methamphetamine and possessing knives and firearms. A prior report to police also stated that Williams barricaded both the front and back door of the apartment with steel beams.

Williams takes issue on appeal with Bulkowski erroneously identifying him as "Tim," when his first name is actually Tommie, and failing to name his apartment number at 1516 North 27th Street. There is no question, however, that Schmidt's affidavit not only contained information which provided a basis to believe the specific apartment where the transaction took place was apartment No. 1, but also linked Williams to that apartment. Moreover, Bulkowski's admissions to Schmidt were statements against penal interest and were corroborated by independent investigation by the police. We conclude, under the totality of the circumstances illustrated by the affidavit, that the affidavit established a fair probability that contraband or evidence of a crime

would be found in Williams' residence. Accordingly, we find no error in the court's order overruling Williams' motion to suppress.

*Ineffective Assistance of Counsel.*

To prevail on a claim based on counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Lopez*, 274 Neb. 756, 743 N.W.2d 351 (2008). In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007).

Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Lopez, supra*. In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

Williams alleges three ways in which his trial counsel rendered ineffective assistance. First, Williams argues that his trial counsel was ineffective because he failed to depose material witnesses before trial. In particular, Williams argues that had his trial counsel deposed Schmidt, he would have learned that Bulkowski "was under the influence of a controlled substance . . . on July 21, 2018." Brief for appellant at 15. He then argues that had trial counsel taken the deposition of Bulkowski, he would have learned that Bulkowski did not recall (1) naming the person he bought methamphetamine from, (2) having an extended conversation with that person that day, and (3) having seen a gun on July 21.

We first note that our record does not reveal what information was in trial counsel's possession by way of discovery or counsel's own investigation. But even if the foregoing items were not revealed until testified to at the suppression hearing or trial, trial counsel's failure to depose the witnesses would not constitute ineffective assistance. Bulkowski testified on cross-examination at trial that he was not in fact under the influence of alcohol, methamphetamine, or any other pills or drugs at the time he was stopped by Schmidt on July 21. Moreover, Schmidt's affidavit makes no reference to Bulkowski being under the influence of any controlled substances, but notes instead that the methamphetamine Bulkowski purchased from Williams earlier that day remained in the pipe that was found in his pocket at the time of his arrest. Schmidt's affidavit also does not allege that Bulkowski had an extended conversation with Williams or observed firearms in Williams' residence on July 21. Instead, the affidavit notes that Bulkowski had observed firearms during the course of his daily methamphetamine purchases from Williams during the preceding month. Finally, the focus of the affidavit for a search warrant was to demonstrate that controlled substances might be found in apartment No. 1. There was no request for the arrest or search of Williams. Therefore, the name of the seller was not a prerequisite to providing probable cause for the search. Because taking depositions would not have yielded the evidence that Williams claims or led to a different result of the proceeding, we cannot find that his trial counsel performed deficiently in this respect.

Next, Williams argues that his trial counsel rendered ineffective assistance by failing to file a motion pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The U.S. Supreme Court held in *Franks*:

> [W]here a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56. Williams alleges that Schmidt omitted from his affidavit information that Bulkowski was under the influence of methamphetamine when they spoke on July 21, 2018, and information that Bulkowski had memory problems due to a history of concussions. He also contends that the affidavit did not make clear the source of the information that Williams lived in apartment No. 1 at 1516 North 27th Street. Finally, he contends that Schmidt provided untrue information in the affidavit by identifying the seller as "Tim."

Williams' arguments in his brief on appeal fail to identify any false statements that were included in the affidavit Schmidt filed nor do the alleged omissions constitute a willful disregard of the truth. While Bulkowski did not recall referring to the seller as Tim, he admitted that his recall of names was not good. Moreover, as we have explained earlier, the search warrant was for a place not a person.

There is no evidence that Bulkowski was under the influence of methamphetamine when he spoke with Schmidt on July 21, 2018. Schmidt did testify that Bulkowski reported having recently used, but did not testify that he was under the influence at the time he was interviewed. Bulkowski testified at trial that he was not under the influence of controlled substances when they spoke. Recent use is not synonymous with being under the influence. Moreover, there is no evidence in our record that Bulkowski's memory issues were known to Schmidt at the time that he drafted and filed his affidavit, and Bulkowski testified at trial regarding his history of concussions, which he said caused a "slight memory problem" that affected only his ability to remember names but not faces or places. Finally, the affidavit makes clear that Schmidt compared the information provided by Bulkowski, including his physical description of the residence and the steel beams used to blockade the front and back doors, with Department records that identified Williams as matching the physical description and that identified Williams' residence as being 1516 North 27th Street apartment No. 1 as being a known source of methamphetamine whose front and back doors were blockaded with steel beams. While Williams questions the sources of information that were located in the Lincoln Police Department Records Management System, he does not allege that Schmidt fabricated any of the recitations he made therefrom, nor does he allege that the information provided therefrom is either untrue or so untrustworthy as to constitute a willful disregard of the truth. Williams fails to make any showing that the affidavit Schmidt filed

contained any false statements, which could give rise to a challenge under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). We therefore find that Williams' trial counsel did not perform deficiently by failing to file a *Franks* motion in this matter.

Finally, Williams argues that his trial counsel was ineffective because he failed to file a motion for new trial based on "a mistake of law based on the testimony of Officer Schmidt and Bulkowski at trial." Brief for appellant at 18. Williams again cites many of the claims he raised above: Bulkowski being under the influence of methamphetamine when he spoke to Schmidt on July 21, 2018; Bulkowski suffering memory problems; Bulkowski having not observed firearms inside Williams' residence on July 21; Bulkowski not knowing Williams' true name; and Bulkowski not knowing Williams' specific apartment number. We have already evaluated each of these claims in turn. Williams was not prejudiced by his trial counsel's failure to file a motion for new trial based on the above claims because such a motion would not have been successful. Therefore, we conclude that Bulkowski's trial counsel did not render ineffective assistance.

CONCLUSION

Based on the foregoing, we affirm the order of the district court overruling Williams' motion to suppress and find that he was not provided ineffective assistance of trial counsel.

AFFIRMED.