Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/07/2018 09:08 AM CDT

State of Nebraska, appellee,
v. Jose Huerta, appellant.
___ N.W.2d ___

Filed August 7, 2018.    No. A-17-562.

1.  **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence
    Rules commit the evidentiary question at issue to the discretion of the
    trial court, an appellate court reviews the admissibility of evidence for
    an abuse of discretion.
2.  **Trial: Rules of Evidence: Expert Witnesses.** A trial court exercises
    its discretion in determining whether evidence is relevant and whether
    its prejudicial effect substantially outweighs its probative value and in
    admitting or excluding an expert's testimony.
3.  **Judgments: Words and Phrases.** An abuse of discretion occurs when a
    trial court's decision is based upon reasons that are untenable or unrea-
    sonable or if its action is clearly against justice or conscience, reason,
    and evidence.
4.  **Rules of Evidence: Other Acts.** Neb. Evid. R. 404(2) does not apply
    to evidence of a defendant's other crimes or bad acts if the evidence is
    inextricably intertwined with the charged crime.
5.  ____: ____. Inextricably intertwined evidence includes evidence that
    forms part of the factual setting of the crime, or evidence that is so
    blended or connected to the charged crime that proof of the charged
    crime will necessarily require proof of the other crimes or bad acts, or if
    the other crimes or bad acts are necessary for the prosecution to present
    a coherent picture of the charged crime.
6.  **Evidence: Words and Phrases.** Unfair prejudice means an undue tend-
    ency to suggest a decision based on an improper basis.
7.  **Trial: Evidence: Appeal and Error.** On appeal, a defendant may not
    assert a different ground for his objection to the admission of evidence
    than was offered at trial.
8.  **Trial: Waiver: Appeal and Error.** Failure to make a timely objection
    waives the right to assert prejudicial error on appeal.

9. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.

10. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.

11. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

12. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

13. **Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

14. **Criminal Law: Trial: Proof: Jury Instructions: Due Process.** In a criminal trial, the State must prove every element of the offense beyond a reasonable doubt, and a jury instruction violates due process if it fails to give effect to that requirement.

15. **Trial: Jury Instructions: Due Process.** Not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process.

16. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

17. **Trial: Prosecuting Attorneys: Jury Instructions.** A statement made by a prosecutor during closing argument can assist a jury in resolving any ambiguity in the jury instructions and may be considered particularly where the prosecutor's argument resolves the ambiguity in favor of the defendant.

18. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred.

19. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

20. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

Appeal from the District Court for Buffalo County: William T. Wright, Judge. Affirmed.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Moore, Chief Judge, and Arterburn and Welch, Judges.

Arterburn, Judge.

## I. INTRODUCTION

Jose Huerta was convicted by a jury of first degree sexual assault. The district court subsequently sentenced Huerta to 6 to 8 years' imprisonment. Huerta appeals from his conviction here. On appeal, he assigns numerous errors, including that the district court erred in making certain evidentiary rulings and in failing to properly instruct the jury. In addition, Huerta alleges that he received ineffective assistance of trial counsel in various respects. Upon our review, we affirm Huerta's conviction.

## II. BACKGROUND

The State filed an information charging Huerta with first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016). Specifically, the information alleged that Huerta, who is 19 years of age or older, subjected a person, who was at least 12 years old, but less than 16 years

old, to sexual penetration. The charge against Huerta stems from an incident which occurred on April 3, 2016. Evidence adduced at trial revealed that during the evening of April 3, 14-year-old C.W. was spending time with her 16-year-old friend, C.G., when C.G. contacted Huerta, whom she referred to as her "uncle," to come pick them up. After Huerta picked the girls up, he drove them to a liquor store where he purchased beer, and then he drove all of them to an apartment owned by his friend, William McGregor.

The events that transpired after Huerta, C.W., and C.G. arrived at McGregor's apartment were disputed at trial. C.W. testified that once they arrived at the apartment, she, C.G., and Huerta all began to drink the beer he had purchased and to smoke cigarettes, which were also provided by Huerta. C.W. testified that she drank four beers, which was more alcohol than she had ever previously consumed. In fact, she drank so much that she threw up in a trash can which was located in the kitchen of the apartment. C.W. testified that after they had been at the apartment for a few hours, C.G. and Huerta went into the bathroom together and shut the door. While they were in the bathroom, C.W. could hear "kissing sounds." When they returned from the bathroom, C.W. observed Huerta touching C.G. "in her vaginal area" over her clothing and kissing C.G.

C.W. testified that at some point, Huerta began touching her vaginal area. C.G. then instructed C.W. to come into the bedroom with her and Huerta. Once inside the bedroom, C.W. sat on the corner of the bed. C.W. testified that C.G. told C.W. that C.W. was "not going to be a virgin anymore." Then C.G. and Huerta undressed and began having sexual intercourse on the bed next to where C.W. was sitting. C.W. testified that Huerta used a condom during his sexual contact with C.G. She indicated that she had observed Huerta obtain this condom from the laundry room in the apartment.

After C.G. and Huerta finished, they dressed and all three of them returned to the living room. However, a few minutes

later, Huerta obtained another condom from McGregor, and C.W., C.G., and Huerta returned to the bedroom. This time, Huerta took off C.W.'s clothes and removed his own clothes. He began having penile-vaginal intercourse with C.W. She testified that she had never had sexual intercourse before and that it was "very painful." She also testified that she told Huerta to stop because she was in pain, but he did not stop. C.W. indicated that during this portion of the assault, C.G. remained in the bedroom. After C.G. left the room, C.W. described that Huerta had anal sex and oral sex with her. She explained that Huerta had "stuck his penis through my anus," that he had "placed my mouth on his penis," and that he "was biting" her vaginal area.

After the assault, C.G.'s boyfriend came to McGregor's apartment to take the girls home. C.W. testified that in the days following the assault, she felt anxiety and depression about what had happened. Ultimately, she was admitted to a mental health hospital where she disclosed the assault.

C.G. also testified at trial and essentially corroborated C.W.'s version of the events which transpired on the evening of April 3, 2016. C.G. testified that she, C.W., and Huerta went to McGregor's apartment where they all began to drink beer, which was provided by Huerta. She testified that at some point, she, C.W., and Huerta went into the bedroom where she and Huerta had consensual sexual intercourse. C.G. described that C.W. was on the bed while she and Huerta had sex. She also explained that after she and Huerta finished, Huerta began having sexual intercourse with C.W. C.G. indicated that after C.W. and Huerta began having sex, she left the bedroom.

During the trial, the State also offered DNA evidence which was recovered from two condoms located in the bedroom of McGregor's apartment. This evidence revealed that on one of the condoms, both C.G.'s and Huerta's DNA was present. On the second condom, C.W.'s DNA was present, but no conclusions could be drawn about the presence of any other DNA

because the sample was "too complex." Both condoms tested positive for the presence of semen.

Huerta did not testify at trial, nor did he offer any evidence in his defense. However, during the trial the State did offer the testimony of Investigator Daniel Warrington with the Kearney Police Department, who had previously interviewed Huerta about his version of the events of April 3, 2016. During the interview, Huerta admitted that the girls were with him at McGregor's apartment, but he denied he had any type of sexual contact with either C.W. or C.G. He described himself as "a mentor" to C.G. During a subsequent interview with Huerta, Huerta continued to "adamantly" deny that he had provided the girls with any alcohol, but admitted that he had drank "a large amount of alcohol." He also admitted that C.G. tried to give him a "lap dance." Huerta told Investigator Warrington that he had observed C.W. and C.G. kissing each other. He then went into the bedroom to sleep.

When Investigator Warrington indicated that law enforcement was testing the condoms found in the bedroom for DNA, Huerta explained that when he awoke after being asleep on the bed, his "pants were loose on him." He told Investigator Warrington that he was concerned that the girls "did something to him while he was passed out."

After hearing all of the evidence, the jury convicted Huerta of first degree sexual assault. The district court subsequently sentenced Huerta to 6 to 8 years' imprisonment.

Huerta appeals his conviction here.

### III. ASSIGNMENTS OF ERROR

On appeal, Huerta assigns four errors. First, Huerta argues that the district court erred in overruling his objections to evidence regarding his sexual contact with C.G. Second, he argues that the court erred in allowing the State to offer evidence of DNA testing which provided inconclusive results. Third, he alleges that the court committed plain error in instructing the jury prior to its deliberations. Finally, he asserts

that he received ineffective assistance of trial counsel in various respects.

## IV. ANALYSIS

### 1. Evidentiary Rulings

On appeal, Huerta alleges that the district court erred in making two evidentiary rulings. First, he alleges that the court erred in permitting the State to present evidence regarding his sexual contact with C.G. on the night of April 3, 2016. Second, he alleges that the court erred in allowing the State to present evidence regarding DNA testing that was done on the two condoms found in a trash can in McGregor's bedroom.

### (a) Standard of Review

[1,2] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *Id.* In addition, a trial court exercises its discretion admitting or excluding an expert's testimony. See *State v. Braesch*, 292 Neb. 930, 874 N.W.2d 874 (2016).

[3] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Johnson, supra*.

### (b) Evidence of Huerta's Sexual Contact with C.G.

During the State's opening statement, Huerta objected to comments regarding Huerta's sexual contact with C.G. on the night of April 3, 2016. Huerta's counsel argued:

> The objection is that, Your Honor, this is prejudicial. It's a 404 objection in that the evidence would tend to indicate

rather than what actually happened between [Huerta] and the alleged victim, [C.W.], that it's probable because he had legal sex with what the law would consider a consenting adult, although, she's a 16-year-old and a minor, that he also did have sex with [C.W.]

So I think that that being the case, that evidence is more prejudicial than probative in that it would allow the jury to make an improper conclusion that, well, if he had sex with this person, then he must have had sex with this other person.

The district court overruled Huerta's objection to the evidence. The court stated:

And at least the Court's understanding is that this is all part and parcel of a series of acts leading to the actual sexual act, which is the basis for the charge. It is not a separate act in and of itself.

And so on that basis, I am going to overrule the objection. I'll allow the State to make an opening statement with regard to what the alleged victim in this case, [C.W.], observed, in large part because it is part of the ongoing criminal act and at least potentially preparatory for grooming her for something that might later have occurred. So I believe it is probative. I believe under the circumstances it is more probative than prejudicial in any event.

When Huerta renewed his objection to this evidence at various points during the State's presentation of evidence, the district court continued to overrule the objection.

On appeal, Huerta argues that the district court erred in overruling his objections to evidence regarding his sexual contact with C.G. on April 3, 2016. He argues that this evidence was not "inextricably intertwined" with evidence regarding the sexual assault of C.W. Brief for appellant at 15. In addition, he argues that the probative value of the evidence was clearly outweighed by its potential prejudice. We conclude that Huerta's assertions have no merit. The district court did not abuse its

discretion in admitting evidence of Huerta's sexual contact with C.G. into evidence.

[4,5] We conclude first that the district court did not err in determining that evidence of Huerta's sexual contact with C.G. was inextricably intertwined with evidence of his sexual assault of C.W. so as to exclude such evidence from the parameters of Neb. Evid. R. 404(2). Rule 404(2) provides the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *Id.*

Huerta's sexual contact with C.G. on the evening of April 3, 2016, was part of the factual setting for the assault of C.W., which occurred on the same evening. The State presented evidence that Huerta and C.G. instructed C.W. to come into the bedroom with them and that they proceeded to have sexual intercourse on the bed while C.W. was seated next to them. In addition, C.W. testified that once they all got into the bedroom, C.G. told C.W. that after that night, C.W. was no longer going to be a virgin. C.W. also testified that while Huerta and C.G. were engaging in sexual intercourse, he tried to pull her down so that she, too, was lying on the bed next to them. The sexual assault of C.W. happened very close in time to Huerta's

sexual contact with C.G. While C.W. testified that there was a little time between the two events because all three of them left the bedroom to go to the living room for a few minutes, C.G. testified that Huerta began having sexual intercourse with C.W. almost immediately after she and Huerta stopped having sexual intercourse.

The record supports a conclusion that the evidence of Huerta's sexual contact with C.G. was necessary to present a coherent picture of the events of the evening of April 3, 2016. In addition, we find that there is some evidence to suggest that Huerta had some sort of plan to "groom" C.W. for the sexual encounter by involving her in the sexual contact with C.G.

[6] We also find that the district court did not err in concluding that evidence of Huerta's sexual contact with C.G. was more probative than prejudicial. Neb. Evid. R. 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *State v. Chauncey*, 295 Neb. 453, 890 N.W.2d 453 (2017).

Evidence of Huerta's sexual contact with C.G. was probative for multiple reasons. First, the evidence demonstrated that Huerta lied to Investigator Warrington about the events of April 3, 2016, on two separate occasions. Huerta repeatedly told Investigator Warrington that he did not have any sexual contact with either C.W. or C.G. Huerta also indicated during his interview with Investigator Warrington that he considered himself to be a mentor to C.G. and that he would not do anything like that to her. Second, as we discussed above, evidence of Huerta's sexual contact with C.G. provided necessary factual context to the events leading up to Huerta's sexual assault of C.W. The evidence suggests that Huerta intended C.W.'s exposure to the sexual contact between him and C.G. to be a

step toward his sexual assault of C.W. Accordingly, while the evidence may have been prejudicial to Huerta, its probative value clearly outweighed any unfair prejudice.

Upon our review, we do not find that the district court abused its discretion in allowing the State to present evidence of Huerta's sexual contact with C.G. on the evening of April 3, 2016. Huerta's assertions on appeal to the contrary are without merit.

(c) DNA Evidence

During the trial, the State called Jeff Bracht, a forensic scientist with the Nebraska State Patrol, to testify regarding his analysis of the two condoms found in a trash can in McGregor's bedroom. Bracht testified that the presence of semen was detected on both condoms. He went on to testify that on the first condom he analyzed, both C.G.'s and Huerta's DNA were present. Huerta objected to Bracht's testimony regarding the DNA on the first condom on the basis that such evidence was more prejudicial than probative. The court overruled the objection.

Bracht testified that his analysis indicated that on the second condom, C.W.'s DNA was present on one side of the condom. Bracht did indicate that on the side of the condom where C.W.'s DNA was present, Huerta was excluded as a contributor of the sample. However, on the other side of the condom, Bracht was unable to include or exclude anyone as a contributor to the DNA present. He testified, "There is just a lot going on. The mixture was too complex to really determine how many people were in that mixture."

Huerta alleges on appeal that the district court erred in allowing the State to present evidence regarding the DNA testing completed on the two condoms. Specifically, he argues that evidence that the first condom contained both C.G.'s and his DNA should have been excluded because the evidence was not relevant to the question of whether he had sexual contact with C.W. Additionally, he argues that evidence that the

second condom contained C.W.'s DNA, but that the remaining sample was "too complex" to reach any conclusions about other contributors of DNA, constituted "inconclusive" test results that "could cause the jury to speculate." Brief for appellant at 17. Because Huerta failed to properly object to the DNA evidence regarding both condoms, we conclude that he has waived his right to appellate review of this issue.

[7] During Bracht's testimony, Huerta objected to the admission of evidence about the condom that contained both his and C.G.'s DNA because the evidence was more prejudicial than probative. However, on appeal, he argues that the evidence should not have been admitted because it was not relevant to whether he had sexual contact with C.W. Essentially, he is asserting a different ground for his objection on appeal than he did at trial. On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered at trial. *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012). Because at trial Huerta did not object to the admission of evidence about the condom that contained both his and C.G.'s DNA on the basis of relevance, he is precluded from arguing that assertion in this appeal.

[8] In addition, Huerta did not object at all to Bracht's testimony regarding the DNA found on the second condom. It is well settled that failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Casterline*, 293 Neb. 41, 878 N.W.2d 38 (2016). We conclude that Huerta has waived appellate review regarding the district court's decision to admit the DNA evidence.

## 2. Jury Instructions

Huerta alleges that the district court committed plain error in improperly instructing the jury regarding the elements of first degree sexual assault and the State's burden of proof regarding those elements. Although we agree with Huerta that the district court did err in its instructions to the jury, we find that such error was harmless.

(a) Standard of Review

[9-11] Whether jury instructions given by a trial court are correct is a question of law. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016). When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court. *Id*. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016).

(b) Analysis

Jury instruction No. 7 provided to the jury informed it of the elements of the charge of first degree sexual assault. That instruction, as given to the jury in this case, read as follows:

> The elements of the crime of first degree sexual assault are:
>
> (1) That the Defendant, . . . Huerta, subjected C.W. to sexual penetration;
>
> (2) That when [Huerta] subjected C.W. to sexual penetration he was a person nineteen years of age or older;
>
> (3) That when [Huerta] subjected C.W. to sexual penetration she was a person at least 12 years of age but less than 16 years of age;
>
> (4) That events occurred on or about April 3, 2016; and
>
> (5) These events occurred in Buffalo County, Nebraska.

During the jury instruction conference, Huerta did not object to this instruction, nor did he offer an alternative instruction in its place. On appeal, however, he argues that the district court erred in giving jury instruction No. 7 because the instruction does not conform to the applicable pattern jury instruction and does not properly instruct the jury that the State has to prove each element of the crime charged beyond a reasonable doubt. We agree with Huerta's basic contention

that the district court erred in failing to model jury instruction No. 7 after the applicable pattern instruction.

[12] As Huerta concedes in his brief on appeal, he did not object to jury instruction No. 7 during the trial. As such, we review only for plain error. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012).

Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case. *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011). NJI2d Crim. 3.0 provides a pattern instruction for explaining to the jury the elements of the charged crime or crimes. Included in NJI2d Crim. 3.0, in addition to the elements of the charged crime, is a separate section which instructs the jury regarding the "Effect of Findings." That section reads as follows: "If you decide that the state proved each element beyond a reasonable doubt then you must find the defendant guilty. Otherwise, you must find the defendant not guilty."

In this case, the district court properly instructed the jury regarding the elements of first degree sexual assault in jury instruction No. 7. However, the court did not include in that instruction the separate section regarding the effect of the jury's findings. Essentially, jury instruction No. 7 failed to inform the jury that it had to find that the State proved each element of first degree sexual assault beyond a reasonable doubt in order to find Huerta guilty of that crime. We agree with Huerta that the district court committed plain error in omitting that portion of the instruction. Nevertheless, we find that the court's omission does not require reversal because such omission constituted a harmless error.

[13] Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not

whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). Upon our review, we conclude that the district court's error in giving jury instruction No. 7 is harmless because the other instructions given to the jury properly instructed it regarding the State's burden to prove Huerta's guilt beyond a reasonable doubt.

[14,15] In a criminal trial, the State must prove every element of the offense beyond a reasonable doubt, and a jury instruction violates due process if it fails to give effect to that requirement. See, e.g., *Middleton v. McNeil*, 541 U.S. 433, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004); *Rose v. Clark*, 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Middleton v. McNeil, supra*. To determine whether Huerta's due process rights have been violated, the question that must be answered is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. See *id*.

Our review of the case law in this area reveals that many courts have considered the effect of failing to instruct the jury regarding each and every element of the charged crime or failing to properly instruct the jury as to the meaning of each and every element of the charged crime. However, this is not the situation presented by this case. The district court properly instructed the jury regarding each element of Huerta's first degree sexual assault charge. However, the court did not explicitly indicate that the jury had to find that the State proved each and every element of first degree sexual assault beyond a reasonable doubt in order to find Huerta guilty of that charge. We have been unable to find a similar case where

a court has failed to specifically delineate to the jury that the State must prove each element of the charged crime beyond a reasonable doubt.

[16] We have examined all of the jury instructions provided to the jury in this case. Notwithstanding the district court's error in giving jury instruction No. 7, we conclude that the jury was properly instructed that it had to find the State proved each element of first degree sexual assault beyond a reasonable doubt in order to return a guilty verdict. All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). And the appellant has the burden to show that a questioned jury instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Id*.

Jury instruction No. 2 stated:

As I told you at the beginning of the trial this is a criminal case in which the State of Nebraska has charged [Huerta] with first degree sexual assault. The fact that the State has brought this charge is not evidence of anything. The charge is simply an accusation, nothing more. [Huerta] has pleaded not guilty. He is presumed to be innocent. That means you must find him not guilty unless and until you decide that the State has proved him guilty beyond a reasonable doubt.

In addition, jury instruction No. 9 instructed the jury regarding the definition of reasonable doubt:

A reasonable doubt is one based upon reason and common sense after careful and impartial consideration of all the evidence. Proof beyond a reasonable doubt is proof so convincing that you would rely and act upon it without hesitation in the more serious and important transactions of life. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

The district court also informed the jury prior to reading the jury instructions that "[n]o one of these instructions contain all of the law applicable to this case. You must consider each instruction in light of all the others." This admonition is also contained in jury instruction No. 1.

[17] In addition to the jury instructions provided by the district court, we note that the State correctly informed the jury about its burden of proof during its closing argument:

> So what I really want you to focus on right now is Jury Instruction No. 7. And that's going to be the elements the State has to prove. As we talked about during my voir dire with you initially when we did the jury selection, if you can remember we talked about what the State's burden is and it is to prove [Huerta] guilty beyond a reasonable doubt of the elements, not every fact that the witnesses say, okay. So let's go over those elements and how the State has proven each one of those individually beyond a reasonable doubt.

Following this statement, counsel for the State explained in her argument to the jury how the burden of proof had been met as to each element of the charged offense. The U.S. Supreme Court noted in *Middleton v. McNeil*, 541 U.S. 433, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004), that a statement made by a prosecutor during closing argument can assist a jury in resolving any ambiguity in the jury instructions and may be considered particularly where, as here, the prosecutor's argument resolves the ambiguity in favor of the defendant.

Based upon our reading of the entirety of the jury instructions provided in this case and considering the statements of the State in its closing argument, we find that the district court's failure to include in jury instruction No. 7 a separate section informing the jury regarding the effect of its findings was harmless error. Read as a whole, the jury instructions properly inform the jury that it had to find that the State had proved all of the elements of first degree sexual assault

beyond a reasonable doubt in order to find Huerta guilty of that crime. To the extent the instructions were ambiguous in any way, the State's clear and explicit explanation of its burden of proof during closing argument resolved that ambiguity. There is no reasonable likelihood that the jury applied jury instruction No. 7 in a way that violates the Constitution. Huerta cannot show he was prejudiced in any way by the district court's omission of the separate section from jury instruction No. 7, and his guilty verdict was surely unattributable to the court's error.

### 3. Ineffective Assistance of Trial Counsel

On appeal, Huerta alleges that his trial counsel was ineffective in (1) failing to object to the testimony of Investigator Warrington regarding Huerta's date of birth, (2) failing to file a motion in limine to exclude evidence of Huerta's sexual contact with C.G., (3) failing to object to jury instruction No. 7, and (4) failing to object to the DNA evidence. We will address each of Huerta's allegations of ineffective assistance of counsel below. First, however, we detail the relevant law which overlays our analysis of ineffective assistance of counsel claims which are made on direct appeal.

[18,19] Huerta is represented in this direct appeal by different counsel than the counsel who represented him during trial. However, we do note that appellate counsel did begin representing Huerta at his sentencing hearing. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is

whether the record is sufficient to adequately review the question. *Id*.

[20] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*. See, also, *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

### (a) Failure to Object to Investigator Warrington's Testimony

Huerta alleges that his trial counsel was ineffective in failing to object to the testimony of Investigator Warrington regarding Huerta's date of birth. That testimony reads as follows:

Q[:] And were you familiar with . . . Huerta from previous contacts with him?

A[:] Just aware from previous law enforcement. We have a database that contains reports, any type of a contact with the individual, which we were able to determine. And based upon his current address . . . being that of . . . Huerta with the date of birth of [March] 1980.

Q[:] And at that time then that would have made him a person over 19 years of age?

A[:] Correct.

Huerta contends that trial counsel failed to make a foundational objection to Investigator Warrington's testimony and that if counsel had done so, the objection would have been sustained and the State would not have had any evidence to prove that Huerta was 19 years of age or older at the time of the offense.

Upon our review, we conclude that the record is insufficient to address Huerta's claim, because it does not contain any indication of why counsel did not object to Investigator Warrington's testimony on foundational grounds or whether the decision to not object was part of counsel's trial strategy.

### (b) Failure to Make Motion in Limine Regarding Evidence of Sexual Contact Between Huerta and C.G.

Huerta alleges that his trial counsel was ineffective in failing to file a motion in limine to exclude evidence of Huerta's sexual contact with C.G. at trial. Huerta acknowledges that his trial counsel did object to such evidence during the trial, but he argues that the issue "would have been better presented at a motion in limine which would have given the Court more time to determine if the sexual contact/intercourse between [Huerta] and C.G. was inextricably intertwined to the sexual assault of C.W." Brief for appellant at 26. Essentially, Huerta argues that had trial counsel presented his objection to this evidence

to the district court prior to trial, such objection would have been successful.

Huerta's allegation of ineffective assistance of counsel has no merit. As we discussed more thoroughly above, the district court did not err in admitting evidence of Huerta's sexual contact with C.G. into evidence, because such evidence was relevant and was more probative than prejudicial. Had trial counsel filed a motion in limine regarding his objection to this evidence, such motion would have failed. Whether the objection was made prior to or during the State's presentation of evidence, the result would have been the same. The evidence was properly admitted.

### (c) Failure to Object to
### Jury Instruction No. 7

Huerta alleges that his trial counsel was ineffective in failing to object to jury instruction No. 7 and in failing to offer NJI2d Crim. 3.0 as an alternative to jury instruction No. 7. Huerta's allegation of ineffective assistance of trial counsel has no merit. As we discussed above, although the district court did err in its giving of jury instruction No. 7 without including the separate section informing the jury about the effect of its findings, we concluded that such error was harmless. Accordingly, even if counsel had objected to the instruction or had offered an alternative instruction, such action would not have had any effect on the ultimate outcome of the trial. Huerta's guilty verdict was not attributable to the district court's error or to his trial counsel's failure to object. Simply stated, Huerta cannot show he was prejudiced by counsel's actions.

### (d) Failure to Object
### to DNA Evidence

Finally, Huerta alleges that his trial counsel was ineffective in failing to properly object to the DNA evidence offered by the State. Our record on appeal is sufficient to address Huerta's claim. The record before us does not support a claim of

ineffective assistance of counsel regarding the failure to object to the DNA evidence.

Huerta argues that trial counsel should have made a relevance objection to evidence that both his DNA and C.G.'s DNA were found on a condom located in a trash can in McGregor's bedroom. He contends that this evidence is not relevant to the question of whether he had sexual contact with C.W. We disagree. Huerta concedes in his brief on appeal that he had sexual contact with C.G. on the evening of April 3, 2016, when he states, "[T]here is no question that [Huerta] had sexual contact/intercourse with C.G. that night. So no surprise that [Huerta's] DNA would be found in the semen on the inside of that condom." Brief for appellant at 18. This statement is in direct contrast to Huerta's statements to Investigator Warrington that he did not have sexual contact with either C.W. or C.G. In addition, it is in contrast to the position he seemingly took at trial.

Contrary to Huerta's assertions on appeal, evidence that both Huerta's DNA and C.G.'s DNA were on the condom was relevant to disprove Huerta's original version of what happened on April 3, 2016. In addition, as we discussed above, it was relevant to support C.W.'s testimony about all of the events which transpired on that date. Accordingly, any objection by trial counsel to this evidence on relevance grounds would not have been successful and trial counsel was not ineffective for failing to raise an unsuccessful objection.

Huerta also argues that trial counsel should have objected to inconclusive DNA evidence which was found on the condom where C.W.'s DNA was identified. Huerta argues that the results of the DNA testing of that condom "were so inconclusive that they could cause the jury to speculate." Brief for appellant at 17. Based on our review of Bracht's testimony regarding the inconclusive DNA evidence, we conclude that Huerta cannot show that he was prejudiced by the admission of the testimony and that, as a result, he cannot demonstrate he received ineffective assistance of counsel.

As we discussed above, Bracht testified that his analysis of the condom indicated that C.W.'s DNA was present on one side of the condom. Bracht did indicate that on the side of the condom where C.W.'s DNA was present, Huerta was excluded as a contributor of the sample. However, on the other side of the condom, Bracht was unable to include or exclude anyone as a contributor to the DNA present. He testified, "There is just a lot going on. The mixture was too complex to really determine how many people were in that mixture." Bracht also testified that the presence of semen was found on the condom with C.W.'s DNA.

We find that this evidence is relevant, in that it supports both C.W.'s testimony and C.G.'s testimony that C.W. had sexual intercourse in McGregor's bedroom on the evening of April 3, 2016. We also find that this evidence is more probative than prejudicial. However, we do note that the weight of the evidence is decreased somewhat due to the inability to identify the male contributor of the semen. We also note that to some extent, Bracht's testimony was exculpatory because he was able to completely exclude Huerta as a contributor of DNA as to one side of the condom. To the extent Bracht was unable to give any identifying information about the other side of the condom, there is no indication of any kind that suggested that Huerta may be a contributor on that side or that would lead the jury to insinuate that he was a contributor to the mixture of DNA. We conclude that Huerta cannot show that he was prejudiced by the admission of this DNA evidence. As such, he cannot demonstrate that he received ineffective assistance of trial counsel in this regard.

## V. CONCLUSION

Upon our review, we affirm Huerta's conviction for first degree sexual assault. As to Huerta's claims of ineffective assistance of trial counsel, we find that he was not denied effective assistance of counsel when counsel failed to make a motion in limine regarding evidence of sexual contact

between Huerta and C.G., failed to object to jury instruction No. 7, or failed to object to the DNA evidence presented by the State. We find that the record is insufficient to review whether trial counsel was ineffective when he failed to object to Investigator Warrington's testimony regarding Huerta's date of birth.

AFFIRMED.

WELCH, Judge, concurring.

While I concur in the result reached by the majority, I respectfully disagree with the reasoning touching on the jury instruction issue.

In *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004), the U.S. Supreme Court held:

> In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. . . . Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" . . . "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" . . . If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."

(Citations omitted.)

In *Middleton*, the U.S. Supreme Court found that the combined instructions were, at worst, ambiguous because they were internally inconsistent. In response, the State of California argued that the prosecutor cured any potential ambiguity by arguing a correct statement of the law to the jury. The U.S. Supreme Court noted that the Ninth Circuit "faulted the state court for relying on the prosecutor's argument, noting that

instructions from a judge are presumed to have more influence than arguments of counsel." *Middleton*, 541 U.S. at 438. In response, the U.S. Supreme Court held:

> But this is not a case where the jury charge clearly says one thing and the prosecutor says the opposite; the instructions were at worst ambiguous because they were internally inconsistent. Nothing in *Boyde* [*v. California*, 494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990),] precludes a state court from assuming that counsel's arguments clarified an ambiguous jury charge. This assumption is particularly apt when it is the *prosecutor's* argument that resolves an ambiguity in favor of the *defendant*.

*Middleton, supra* (emphasis in original).

I agree with the majority that the omission of NJI2d Crim. 3.0's "Effect of Findings" from jury instruction No. 7 which sets forth the State's burden of proof as to each and every element of the crime rendered that instruction, in isolation, an erroneous jury instruction. When read as a whole with all instructions, the district court properly instructed the jury that the State had the burden of proof beyond a reasonable doubt for the offense, but left out that the burden attached to each and every element. I disagree with the majority that the combined instructions "properly instructed that [the jury] had to find the State proved each element of first degree sexual assault beyond a reasonable doubt in order to return a guilty verdict." Without reference to the burden attaching to each and every element, the instructions were ambiguous. That said, the instructions as a whole, taken together with the prosecutors' argument to the jury which clearly delineated that the State's burden attached to each and every element of the offense, left no reasonable likelihood that the jury applied the challenged instructions in a way that violates the Constitution. As such, I concur with the majority that the judgment of the district court should be affirmed as to this issue, and I join with the court as to the remainder of the majority opinion.